## HAVERHILL BRIDGE PROPRIETORS *vs.* COUNTY COMMISSIONERS OF ESSEX.

The legislature, in exercising the right of eminent domain, may (as by the St. of 1868, *c.* 309, § 8) require county commissioners to take and lay out a bridge as a highway, and to determine and apportion between the county and the benefited towns and cities the damages to be paid therefor.

If one of the board of county commissioners, who were required by the St. of 1868, *c.* 309, § 8, to lay out certain bridges as highways, resided in a town or city in which one of the bridges was situated in whole or in part, such a residence disqualified him to act in the case of that bridge, unless the board could not otherwise be organized; and the other members might substitute for him a special commissioner, under the Gen. Sts. *c.* 17, § 12.

Under the St. of 1868, *c.* 309, § 8, which required county commissioners to lay out certain bridges as highways "in the manner now provided by law for the laying out of highways, and according to the provisions of" the St. of 1867, *c.* 296, "so far as the same are applicable," and to determine and decree what proportion of the damages sustained by the bridge proprietors should be paid respectively by the county and the several cities and towns benefited, all the damages are to be paid, in the first instance, from the county treasury, and an adjudication by the commissioners, which leaves the bridge proprietors to enforce against the cities or towns their liability for the proportion on them assessed, is erroneous; but the whole proceedings of the commissioners are not necessarily avoided by such error, but may be amended by the judgment of this court on *certiorari,* under the Gen. Sts. *c.* 145, § 9.

In awarding, after due notice, what proportion of the damages sustained by the proprietors of a bridge laid out as a highway under the St. of 1868, *c.* 309, § 8, should be paid respectively by the county and a city thereby benefited, the county commissioners specified the sums payable by each, but omitted to provide that both sums should be paid in the first instance from the county treasury. The proprietors demanded such total payment from the county, and, upon its refusal to pay more than the sum apportioned to it, sued out writ of *certiorari* against the commissioners. *Held,* that, in correcting the error, under the Gen. Sts. *c.* 145, § 9, the court might charge the county with payment to the petitioners of interest on the sum apportioned to the city from the time of said demand, and charge the city with reimbursement of such interest to the county.

PETITION for a writ of *certiorari* to quash proceedings of the respondents in laying out the petitioners' bridge as a highway, under the St. of 1868, *c.* 309, § 8, which became a law June 5, 1868, and provided that " the county commissioners of the county of Essex " should, within sixty days thereafter, " lay out as and for highways " certain bridges over the Merrimack River, including " Haverhill Bridge, between the towns of Haverhill and Bradford," " in the manner now provided by law for the laying out of highways, and according to the provisions of " the St. of 1867, *c.* 296, " so far as the same are applicable," and that " the said commissioners shall also determine and decree what proportion of the amount of damages sustained by the proprietors of said bridges, or of either or any of them, by such laying out, shall be paid respectively by the county of Essex and by the several cities and towns which the said commissioners shall determine are benefited by such laying out."

The petition alleged that, in the court of county commissioners, on August 4, 1868, a report, signed by two of their number, and by Nathaniel H. Griffith, a special commissioner in the place of Jackson B. Swett, the third of their number, was filed, accepted and ordered to be recorded, " that the said bridge may be known as a public highway forever ; " the material part of which report is as follows :

" Whereas, by an act of the legislature of Massachusetts, approved June 5, 1868, and being chapter three hundred and nine of the acts of said year, it was ordered and directed that the county commissioners of the county of Essex should, within sixty days from the passage thereof, lay out as and for highways the several bridges named in the eighth section of said act, including therein the bridge known as Haverhill Bridge, between the towns of Haverhill and Bradford in said county ; and whereas further, in pursuance of said act, said county commissioners duly notified all parties interested, and did, on the 29th day of July 1868, proceed to visit said bridge and hear all parties interested. Now, on this 4th day of August 1868, we do lay out said bridge, known as the Haverhill Bridge, between the towns of Haverhill and Bradford in said county, as and for a

public highway. And, having heard all parties interested therein, we do estimate the damages sustained by the proprietors of said Haverhill Bridge at the sum of $23,000, to be paid in the manner hereinafter set forth. And, in pursuance of the duty imposed upon us by said act, we do adjudge and decree that, of said sum, $10,000 shall be paid out of the county treasury; $9000 shall be paid by the inhabitants of the town of Haverhill; and $4000 shall be paid by the inhabitants of the town of Bradford. All of which sums shall be payable to said proprietors by said county and towns as aforesaid, upon the laying out of said bridge as a highway as aforesaid."

The petitioners alleged that these proceedings of the county commissioners were illegal and void, for the following reasons :

1. "Because the provisions of the St. of 1868, *c.* 309, under which the aforesaid action of said commissioners was claimed to be taken, in so far as the same purport to direct and provide for the laying out of said bridge as aforesaid, and the taking of the property and franchise of the petitioners in the premises, are wholly inoperative and void, and contrary to the provisions of the Constitution of this Commonwealth ; in that they direct a judicial body to do a judicial act without the exercise of any discretion on its part, and suspend the general standing law by a special enactment for the case, and provide that property of individual citizens may be taken for public use without adequate remedy for their compensation, and deprive them of the privilege of submitting the same to the determination of a jury."

2. " Because there was no adjudication by said commissioners as to the common convenience and necessity for laying out said bridge."

3. " Because a special commissioner was called in at the hearing, and acted in the laying out of said highway and appraisement of damages, in the place of one of the county commissioners."

4. " Because the said commissioners have decreed that a part only of the amount estimated and appraised by them as compensation to the petitioners, and damages occasioned by the

said laying out of their bridge for a highway, shall be paid from the county treasury, and the remainder by different towns in the county, whereas the whole amount should have been payable to the petitioners from the county treasury."

5. " Because no way is provided to the petitioners for the collection of those portions of the damages appraised which are decreed to be paid by the inhabitants of Haverhill and Bradford, and the petitioners are without adequate remedy for the collection and enforcing payment of the same, the said inhabitants of Haverhill and of Bradford having neglected and refused to pay the same when requested."

The respondents, answering, admitted " that the matters of fact stated in the petition are correctly stated," and, " as to the special claim that a special commissioner was called in," alleged " that Jackson B. Swett, one of their number, being an inhabitant and taxpaying citizen of Haverhill, which was one of the towns in which said bridge was situated, and which was interested in the question to be decided, the respondents adjudged that he ought not to act as one of the board in reference to said bridge, and called in a special commissioner, as they deemed it their duty to do;" and they submitted their proceedings to the court, alleging " that they were in all respects formal, regular and conformable to law, and that the same ought not to be quashed or in any way interfered with."

At the hearing, before *Colt*, J., " no facts were in dispute, the allegation in the answer in regard to the special commissioner being admitted;" and the case was reserved for the determination of the full court.

*G. F. Choate*, for the petitioners.

*S. B. Ives, Jr.*, (*J. C. Perkins* with him,) for the respondents.

Colt, J.*    The St. of 1868, *c*. 309, imperatively requires the county commissioners to appropriate the property and franchise of the petitioners to the public use by laying their toll bridge out as a highway.   It is objected that its provisions violate the Constitution of the Commonwealth.   The court are of opinion

* Morton, J., did not sit in this case.

that, under this statute, construed according to the manifest intent of the legislature, the power existing in the supreme authority of the state, to take private property for the public use, may be lawfully exercised.

It belongs to the legislature to determine, in view of the general welfare, whether an exigency exists which justifies the exercise of this right of eminent domain. Ordinarily, as in the case of the laying out of highways, provisions are made by general laws for the exercise of the power; and the necessity for its application in particular instances is left to the adjudication of certain designated officers or tribunals. But there can be no doubt that the power, which may thus be delegated, may, when occasion requires, be exercised by the legislature itself. In such case, its decision is final; no discretion is given to the agents employed to make the appropriation and fix the compensation to be made; and neither the agents nor the courts have power to revise the decision. Under this statute, therefore, the county commissioners had no authority to adjudicate upon the question of common convenience and necessity; and in this respect there is no error in their proceedings.

The action of the commissioners in substituting a special commissioner, in place of the one who was an inhabitant of one of the towns in which the bridge was located, is not irregular. Under the Gen. Sts. *c.* 17, § 12, the commissioner so situated could not act in the premises, unless it was found impossible to organize a board without him.

The doings of the commissioners are further charged to be irregular and void, because only a portion of the damages estimated and appraised as compensation to the petitioners are decreed to be paid from the county treasury; the balance having been ordered by them to be paid by different towns, with no provision made for its collection, and no adequate remedy for enforcing its payment.

The duty of paying an adequate compensation, for private property taken, is inseparable from the exercise of the right of eminent domain. The act granting the power must provide for compensation, and a ready means of ascertaining the amount.

Payment need not precede the seizure; but the means for secur-
ing indemnity must be such that the owner will be put to no
risk or unreasonable delay. If this statute, as it seems to have
been understood by the commissioners, instead of providing for
payment, gives only a right of action against certain towns in
the county for a substantial portion of the damages assessed,
with no process pointed out by which the right may be enforced
without unreasonable delay, there would be force in the objec-
tion now urged against it on constitutional grounds. But this
is not the true construction. The commissioners are required
to lay out the bridge as a highway, in the manner provided for
the laying out of common highways, and according to the pro-
visions of the St. of 1867, *c.* 296, so far as the same are appli-
cable; and also to determine and decree what proportion of the
amount of damages sustained by the proprietors shall be paid,
respectively, by the county, and by the several cities and towns
which they shall determine are benefited by such laying out.
The statutes relating to the laying out of highways provide that
all expenses and damages allowed, and all sums allowed as in-
demnity, shall be paid, by order of the commissioners, by the
county. Gen. Sts. *c.* 43. And where turnpikes are laid out, with
the assent of the corporation, as common highways, damages
allowed shall be paid out of the county treasury, with power in
the commissioners to order a portion to be refunded by the cities
or towns through which the road passes, and to issue a warrant
for its collection against delinquent towns. Gen. Sts. *c.* 62,
§§ 14, 15; *c.* 43, §§ 49, 50. The proceedings attending the con-
version of a turnpike into a common highway are, in most
respects, analogous to the contemplated taking of the petition-
ers' toll bridge, and its conversion into a highway; and are
referred to in the statute, as indicating the mode to be pursued.
They clearly imply that the damages assessed are to be paid in
the first instance from the county treasury. This construction
is confirmed by the provisions of the St. of 1867. This act
authorized the commissioners, in their discretion, to lay out this
bridge, giving to the several cities and towns power to con-
tribute to the county such sums as they might see fit towards

the payment of damages.  It is plain that, if the bridge had been taken under this statute, the petitioners' damages would all have been payable from the county treasury, and would have included the sums so contributed.  No action was in fact had under it; but its provisions, so far as applicable, are incorporated into the subsequent St. of 1868, and imply that the amount to be paid by the towns under the assessment must go into the county treasury, as the contribution would have gone before. *Boston & Lowell Railroad Co.* v. *Salem & Lowell Railroad Co.* 2 Gray, 1, 37.

The proceedings of the commissioners, as presented upon this record, therefore were only erroneous in failing to order the payment of all the damages sustained by the petitioners to be made in the first instance from the treasury of the county, and requiring the towns named to refund to the county the amounts awarded to be paid by them.  But this defect does not require that the whole proceedings should be set aside.  Under the Gen. Sts. *c.* 145, § 9, this court may now enter such judgment as the court below should have rendered, and make such judgment or .decree in the premises as law and justice require.  *Lowell* v. .*County Commissioners*, 6 Allen, 131.

The writ of *certiorari* must therefore issue in this case, in order that, when the record is brought up, it may be corrected in .conformity with the opinion here stated.

*Writ of certiorari to issue.*


.The petitioners sued out the writ of *certiorari,* which was duly served and returned, and the record of the proceedings of the respondents was certified and brought into court as therein commanded, at April term 1870, when a decree was passed by *Ames,* J., of which the following are the material parts:

".It .is ordered and decreed that so much of said record as provides for the payment directly to the petitioners of any portion of .the damages awarded them to be made by said towns of Haverhill and Bradford, or either of them, be quashed and annulled and.rendered of no effect; and, it being made to appear that, of he .sum of $23,000 awarded by the respondents as damages

sustained by the petitioners, as appears by said record, the sum of $10,000 in said record ordered to be paid out of the treasury of said county has been duly paid, and that the balance of the amount so awarded, being the sum of $13,000, was duly demanded by the petitioners to be paid from said county treasury on the 11th day of August, a. d. 1868, and payment thereof refused, it is further ordered and decreed that said sum of $13,000 be paid to the petitioners out of the county treasury of said county of Essex, with interest thereon from said 11th day of August, and that the petitioners shall also have and receive their costs of suit." " And the respondents are hereby ordered and directed forthwith to draw their proper order for the payment of the said sum of $13,000, and interest and costs as aforesaid, to the petitioners, out of the county treasury of said county of Essex ; and it is further ordered, as to said portion of the damages, including interest as aforesaid, awarded to the petitioners, so decreed and ordered to be paid out of the county treasury, that the same shall be refunded to the said treasury by the city of Haverhill, which has by law succeeded to the rights and assumed the obligations of said town of Haverhill in the premises, and by the town of Bradford, in the proportions of $9000 by said city of Haverhill, and $4000 by said town of Bradford, instead of the payment to the petitioners by said town as is ordered in said record ; and notice hereof and of the doings of the respondents shall be given by the respondents to said city and town, stating the proportions which they are respectively required to pay ; and if either said city or town shall refuse or neglect to pay its proportion, including interest as aforesaid, the same proceedings shall be had to enforce the payment as are provided by law in cases of expenses of making highways by the county commissioners, where cities or towns neglect to make the same."

Thereupon, at said term, " by consent of court, the city of Haverhill, by its attorney, appeared and appealed from so much of said decree as applies to said city ; " and the questions of law arising on the appeal were argued at November term 1870.

*J. J. Marsh,* for the city of Haverhill, argued that so much of the decree as directed the payment by that city of interest on $9000 from August 11, 1868, was unauthorized : 1st. because the delay in the receipt of the $9000 by the petitioners was owing to no fault of the city, but to the error of the county commissioners; 2d. because there could be no sufficient demand on the city to pay $9000 until after the correction of that error; and 3d. because the city was not a party to the original suit, and had no opportunity to show therein why interest should not be decreed against it; and cited to the first point, *Oriental Bank* v. *Tremont Insurance Co.* 4 Met. 1 ; *Hubbard* v. *Charlestown Branch Railroad Co.* 11 Met. 124, 128 ; *Bruere* v. *Pemberton,* 12 Ves. 386 ; and to the second point, *Dodge* v. *Perkins,* 9 Pick. 368 ; *Lee* v. *Munn,* 8 Taunt. 45.

· *J. C. Perkins & S. B. Ives, Jr.,* for the county of Essex, argued that the city had no right of appeal ; and also to the merits.

AMES, J. Upon the correction of the error and the entry of the proper judgment, it became necessary to provide for the payment by the county not only of so much of the damages as remained in arrear, but also of the interest which had accumulated in the mean time. The delay was owing to no fault on the part of the bridge proprietors, and if interest should not be allowed them they would not receive the full indemnity intended in the original award. In making this payment, the county advances money for the two municipal bodies specially benefited, and has a right to call on them to refund at least their respective proportions of the sum originally awarded. The only question raised by this appeal is, whether they are liable also for interest. Without going into the question whether they had a right of appeal in this form and at this stage of the case, we are satisfied that the judgment from which they have attempted to appeal was correct and just.

The accumulation of interest was the unavoidable result of litigation, without any misconduct or neglect of duty on the part of the county or any of its officers. The county paid at once the full proportion of the damages intended to be the ulti-

mate charge upon its own treasury, towards the purchase of the bridge. Nothing was in arrear except the portion intended to be finally chargeable to the two towns. It is difficult to see why the county's share of the expense should be increased and made more burdensome because the course of events has been such that the two towns have had an opportunity to delay their contribution to the general purpose for somewhat over two years. They have had all the benefit of the delay. They had notice of the hearing before the commissioners, and cannot be supposed to have been ignorant of the award. The principal error in the proceedings was, that the bridge proprietors were left without adequate means of enforcing the collection of so much of their damages as was to be paid by the two towns. The litigation apparently was made necessary by their refusal to pay their share, and it would be unjust that the delay which they have occasioned, and which has been beneficial only to them, should be allowed to throw an additional burden upon the only contributor to the general object which was not in fault, namely, the county of Essex. *Appeal dismissed.*