ORRIN CHAPMAN et al., Commissioners of Highways, etc., Respondents, v. ARCHIBALD H. GATES, Appellant.

A strip of land adjoining lands of defendant had been worked and used as a highway for fifteen years. Defendant, as commissioner of highways, assented to the expenditure of $200 of public moneys in protecting it as a highway; such expenditure also protecting his own lands. He had also, as overseer, ordered it to be worked, but at the time he was ignorant of the fact that there was a question as to its being a valid highway. Subsequently, discovering this to be the fact, he purchased the strip of land and closed up the road. In an action to recover the statute penalty for obstructing a highway, *held*, that defendant was not estopped by his acts as a public officer, prior to his purchase, from questioning the validity of the proceedings laying out the highway; that the rights of the then owner were unaffected by such acts and defendant had the right to acquire the legal title, which vested him with all the rights of such owner.

Upon the trial of said action evidence was given, on the part of plaintiffs, tending to show that a proper application in writing for the laying out of the highway, with a certificate of twelve freeholders of its necessity and propriety, was presented to the commissioners of highways of the town (three in number); that an order was made by two of the commissioners, the other being absent, refusing to lay out the road; and that an appeal was taken therefrom by the applicant to the judges of the Court of Common Pleas of the county, and that an order of said judges was made, which was filed and recorded in the office of the town clerk. Evidence was also given tending to show the loss of the original order, and thereupon a sworn copy of said order was offered in evidence. This was objected to on the ground, among others, that the original order or the record was the best evidence, and should be produced; also that it had not been sufficiently shown that the commissioners had made a determination refusing to lay out the highway, which objections were overruled. *Held*, no error; that the objections did not raise the question as to the sufficiency of the proof of the loss of the original order; and in case of loss, the provisions of the statute requiring the order to be filed and recorded (1 R. S., p. 519, § 89) do not preclude other secondary evidence than the record of its contents; that the objections were insufficient to enable defendant to present the question that the order of the commissioners was invalid because made by two in the absence of the third, or that the genuineness of the signatures of the commissioners did not appear.

One of the freeholders who acted in determining as to the necessity of the road, called as a witness for plaintiff, was asked if he came to the conclu-

sion that the highway was necessary, and an answer was admitted under objection. *Held*, that assuming this to be error, it was harmless; that the witness having signed a certificate that the road was necessary, the additional evidence could not prejudice defendant.

An owner of land, over which a highway is laid out, has no right to obstruct the same, although the damages sustained by reason of the laying out and opening of such highway have neither been paid or assessed; and by making such obstruction he renders himself liable to the penalties prescribed by statute therefor.

The provisions of the general highway laws providing for compensation to the owners of lands taken for highways, are sufficient to meet the requirements of that provision of the State Constitution prohibiting the taking of private property for public use without just compensation (art. 1, § 6), and the assessment and payment thereof need not precede the entry and occupation by the public.

Some authorities on the question of compensation for private property taken for public use, collated and discussed.

*It seems*, however, that a provision for compensation, by means of a *local special* assessment on lands adjoining those taken, to raise the money required, is not a compliance with the constitutional requirement as to compensation. (LOTT, Ch. C.)

(Argued March 13, 1873; decided June term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the sixth judicial district, in favor of plaintiffs, entered upon an order denying motion, on the part of defendant, for a new trial, and directing judgment upon a verdict.

This action was brought originally in Justice's Court to recover of the defendant penalties to the amount of twenty-five dollars for obstructing a highway in the town of Big Flatts, in Chemung county, by the erection of fences upon and across the same.

The defendant denied the allegations in the complaint and set up, also, as a defence, that the place where the acts complained of were committed was not a highway, and that he was the owner thereof in fee simple. The requisite undertaking having been given, the action was transferred to the Supreme Court.

The facts, material to the questions decided, sufficiently appear in the opinion.

*Samuel Hand* for the appellant. An exception to a direction of a verdict by the court raises the question whether plaintiffs proved facts authorizing them to recover. (*Low v. Hall*, 47 N. Y., 102.) The proceedings in laying out the road were defective in not assessing the damages of the owners by a commissioner and two assessors. (1 R. S., 515, § 64; Laws of 1845, p. 184, § 5; *Wallace* v. *Karlenowefski*, 19 Barb., 118; *Bloodgood* v. *N. and H. R. R.*, 18 Wend; *In re Flatbush Ave.*, 1 Barb., 286.) The non-residence or infancy of the owners of the land does not excuse the failure to assess their damages. (1 R. S., 615, § 64.) The damages of the owners of the land must be assessed separately. (*Rex* v. *Trustees of Norwich Road*, 5 Ad. & Ell., 578.) The commissioners to acquire jurisdiction must prove a compliance with all the requirements of the statute. (*Harrington* v. *People*, 6 Barb., 607, and cases cited; *People* v. *Hinds*, 30 N. Y., 470; *Cleveland* v. *Boerum*, 27 Barb., 252.) No valid order refusing to lay out the road was made by the commissioners; and there was, therefore, no foundation for the appeal or the judge's order laying out the road. (1 R. S., 525, § 125; *People* v. *Hinds*, 30 N. Y., 470; *Stewart* v. *Wallis*, 30 Barb., 344.) The evidence of the posting of the notices is insufficient. (1 R. S., 514, § 59 [1st ed.].) There is no evidence that the freeholders who certified the road was necessary were sworn as required by the statute. (1 R. S., 574, § 58 [1st ed.].) Working the road as a highway did not make it such or estop defendant from denying it was such. (*Miller* v. *Garlock*, 8 Barb., 153.) The copy of the judge's order laying out the road not being recorded according to statute was inadmissible. (1 R. S., 519, § 89 [1st ed.].)

*Charles Mason* for the respondents. The recital of the jurisdictional facts in the record is *prima facie* proof of their performance. (12 Wend., 102; 3 id., 42; 15 id., 372; *Jenks* v. *Stebbins*, 11 J. R., 226; *Harrington* v. *People*, 6 Barb., 610; 6 Wend., 447; 5 id., 148; 4 Cow., 292; 28 N. Y., 641, 653; 2 Am. Lead. Cases, 719, *et seq.*) In laying out a high-

way notice must be given to the occupant of the land; the owner does not require notice. (2 R. S. [5th ed.], 395, § 77.) The road having been properly laid out the public can only be divested of its title by a failure to open, work or use it for six years after it was laid out. (2 R. S. [5th ed.], 405, § 133.) The statute requiring the damages to be assessed before the road shall be opened, worked or used, is merely directory, and a compliance with it is not essential to the laying out of the road. (1 R. S. [2d ed.], 512, §§ 68, 69, 72, 73, 74; 18 Wend., 9, 18, 27, 28, 35, 36, 74; 19 Barb., 121.) If the jury having jurisdiction committed an error in assessing the damages jointly to two persons, the remedy is by certiorari or appeal from the judgment. (8 J. R., 44, 50; 7 Cow., 585, 606–608; 12 Pick., 572, 582, 583; 12 Wend., 19.) The objection to the introduction in evidence of the town book of records was unavailable, because no ground of objection was stated. (*Shaw* v. *Smith*, 3 Keyes, 316; *Merritt* v. *Seaman*, 6 Barb., 330; 2 Hill, 603; 6 J. R., 496; 24 Wend., 381; 2 Seld., 345; 18 N. Y., 448; 20 id., 32; *Fountaine* v. *Pettie*, 38 id., 184, 186; *Mabbett* v. *White*, 12 id., 442; 2 Abb. Pr. [N. S.], 341.) After the use of the road by the public for fifteen years the law will presume all the preliminaries necessary to lay out the road performed. (*Bergen* v. *Bennett*, 1 Caine's Cas. in Error, 18; *Tunspeed* v. *Hawkins*, 1 McCord, 272; *Jackson* v. *McCall*, 10 J. R., 377; *All Sts. Church* v. *Lowell*, 1 Hall's N. Y., 191; *Phila. and T. R. R. Co.* v. *Stimpson*, 14 Pet., 448–458; *Leland* v. *Cameron*, 31 N. Y., 115; *People* v. *Carpenter*, 24 id., 86; 17 J. R., 461; 9 Wend., 17; 21 id., 178; 3 Den., 249; id., 594; 1 Com., 79; *Tucker* v. *Rankin*, 15 Barb., 471.) The consent of Boyer to the laying out of the road is shown by his accepting the damages assessed, and his acquiescence in the opening and use of the road. (*Noyes* v. *Chapin*, 6 Wend., 461; *People* v. *Goodwin*, 5 N. Y., 568; *People* v. *Albright*, 23 How. Pr., 306–310; *Baker* v. *Braman*, 6 Hill, 47, 48; *Ward* v. *Davis*, 3 Sandf., 502; *Denning* v. *Roome*, 6 Wend., 651.) The general exception to the direction of a verdict for twenty-five dollars for plaintiffs by the

court, raised no question as to the sufficiency of the evidence to establish the road. (*Plumb* v. *Catt. Mut. Ins. Co.*, 18 N. Y., 392; *Winchell* v. *Hicks*, id., 558; *Grader* v. *Stillwagen*, 25 id., 316; 28 Barb., 157; 6 Hill, 405, 410.)

LOTT, Ch. C. There was no question made on the trial as to the commission of the acts complained of as obstructions to the road in question, and it was also shown that the defendant was then the owner of and in possession of the land on which they were committed; but the defendant denied that it was subject to a public highway. It was proved that it had been used as such for fifteen years, and that the defendant, as a commissioner of highways, in connection with his co-commissioners, had expended two hundred dollars in a single year to protect it, and that he had also, " as path-master," ordered it to be worked as a public road. This expenditure was incurred three or four years before the obstructions were made, and it appeared that the defendant at that time owned land on one side of the place where the money was expended, and that it was protected by what was done, that he was consulted about it, and did not object to it; nor did he make any objection that the land was not a public highway while the money was being expended, at any time during his term of office as such commissioner of highways. He afterward, for the consideration of one hundred and fifty dollars, purchased and obtained title to a piece of land containing eight acres (including the ground on which the obstructions were made, but not in any manner referred to as a highway), from one Nathan Reynolds, who had acquired his title from John I. Heckart and others, heirs-at-law of Peter Heckart, deceased, by deed bearing date the 17th day of October, 1853, and it is claimed on behalf of the respondents that, notwithstanding such purchase and acquisition of title, the defendant " is estopped by his own acts and dealings with the public from disputing this road to be a public highway." Their counsel insists and urges in his points that " the law will not permit a man so far to ignore good faith and common

honesty as to expend the public money, controlled by him as a public officer, so as to benefit his own private property, and then turn around and affirm he had no right so to expend it, and thus rob the public of the benefit of its expenditure; nor will it permit him to use his official right to the records of the title of the public to property, *in order to search or spy out defects in that title*, and then to buy up eight acres, for one hundred and fifty dollars, so as to deprive the public of their title to about one acre and a half, which has cost them three hundred dollars in cash and a yearly amount of labor for fifteen years."

Whatever may be thought of the *propriety* of such conduct, such claim, as a *legal* proposition, is not tenable. The defendant, in reference to the expenditure of the money and his acts as overseer of highways in ordering work to be done as above stated, testified as follows: "I then had no suspicion but that the town claimed it as a road, but afterward, the commissioners came to the conclusion that it was not a road, and they went to the town board and they said it was not a road, and upon that I purchased it of Reynolds, and since my deed, I have claimed to own the strip," adding: "I have before refused to buy it of him on account of the road."

It will be seen from the preceding statement of the facts, that the defendant, at the time when the transactions relied on as an estoppel occurred, did not own the land, which is the subject-matter of the controversy. His acts could not affect the rights or title of Reynolds, who was then the owner; and, although the conduct of the defendant, under all the circumstances, may be deemed illiberal to his neighbors and the public, discreditable to himself as a citizen, and properly condemned by every fair-minded man, he had, nevertheless, the *legal* right to acquire the title of Reynolds, and that vested him with all rights which Reynolds had to the property. Those rights were entirely unaffected by the defendant's previous acts in reference to and over it as a public officer, in ignorance of the fact that it was not a public road, and he has done nothing in recognition of it as a highway, since the

acquisition of those rights, which could prevent him from closing it up.

It then remains to be considered whether the premises were subject to a highway when he acquired Reynolds' title.

There were several exceptions to the admissibility of evidence on the trial, which are not referred to in the points of the appellant's counsel, and were not relied on by him on the argument, and, therefore, will not be particularly noticed by me. Those that appear to be insisted upon will hereafter be considered. It was sufficiently proven that an application in writing, signed by a person liable to be assessed for highway labor in the town of Big Flatts, was presented to the commissioners of highways of that town for laying out the road in November, 1844, and that a certificate, by twelve freeholders, of the necessity and propriety of such road was also delivered to them. The commissioners refused to lay out the road, and made an order to that effect, which it appears was signed by two of the commissioners only, the other being absent. An appeal was taken by the applicant from that order to the judges of the Court of Common Pleas of Chemung county, who, in May, 1845, made an order reversing the determination of the commissioners, and laying out the highway pursuant to the application. That order recited such appeal to them, that they had given a notice of it to the commissioners, specifying therein a time and place at which they would commence to hear it; that they had so met, and that they had, after hearing the proofs and allegations of the parties, determined and decided that such determination ought to be reversed.

The making of the said order by those judges is not denied by the appellant's counsel, but he claims that "no valid order refusing to lay out the road was ever made by the commissioners," and that "there was, therefore, no foundation for the appeal or the judges' order laying the road." Two objections are stated by him to the commissioners' order: First, that, although there was evidence, to which he refers tending, to show that such order was, in fact, made, he claims that "there should

be some evidence of the genuineness of the commissioners' signatures to it, to justify submitting it to the jury," and that, "at most, the evidence is not sufficient to justify taking the fact from the jury and directing a verdict;" and, second, that it had been testified by one witness that "there were three commissioners at the time of the determination refusing to lay out the road, but one of them was absent," and that, therefore, "their action was void."

There is a sufficient answer to these objections in the fact that they were neither of them taken on the trial. A copy of the judges' order was offered in evidence, which was objected to by defendant. Among the grounds of objection stated were the following: That it had not been shown "that the commissioners of highways had made a determination refusing to lay out such highway; nor that any person had appealed from such determination," and none other was made having any application to the two objections above set forth. There was nothing in either of those grounds to indicate any question as to the genuineness of the commissioners' signatures to the order; nor that it was claimed to be invalid because it was signed by only two of them. There had, in fact, been evidence sufficient to justify the conclusion that the signatures were genuine, and there was no request to submit that or any other question to the jury.

It is also claimed that there was not *sufficient* evidence of the following facts:

1st. "That notice was posted six days, in three public places, specifying the route of the proposed road, the lands through which it would pass, and the time and place at which twelve freeholders would meet to inquire into the necessity for it."

2d. "That twelve freeholders certified the road to be necessary."

The objection is not that there was *no* evidence in relation to those matters, but to its *sufficiency*, and its insufficiency was, at the trial, urged and relied on for no other purpose than

as a ground against the admission of the judges' order in evidence. There had, at that time, been testimony tending to show all of those facts, and no specification of any defect in the proof was made. The court could not, under such circumstances, properly refuse to admit the order on the general objection made that "they had not been sufficiently shown."

It is also insisted that the *copy* of the judges' order admitted in evidence, and which was sworn by the town clerk to be a *copy of the original order*, filed in his office, was inadmissible. The objection to its admission at the trial was "that such copy was not the best or competent evidence of the order, that the record or the original order should be produced." It was proven by the town clerk, as has already been stated, to be a copy of the original, which he, at the same time, said had been taken from his office, and the inference from what he said in connection with the subject, was that it could not be found, and it was not claimed that sufficient proof had not been given of its loss, or of facts to excuse its production. The objection was, in effect, that no copy, except *the record*, was admissible. The statute requires the order to be filed in the office of the town. clerk, and it is made his duty " to record the same " (1 Revised Statutes, 519, § 89), but such duty (assuming it to have been performed) did not preclude any other *secondary* evidence of its contents.

One of the freeholders who acted in examining and determining in regard to the necessity and propriety of the highway, was asked, " did you come to the conclusion that a highway was necessary and should be laid ? " To this question the defendant's counsel objected. It was, nevertheless, admitted, and an exception taken to its admission is now relied on as a ground for the reversal of the judgment. Assuming it to have been erroneous, the error was entirely harmless. Evidence had previously been given tending to show that the requisite number of freeholders had acted in making such examination, and it was proven that " they made a certificate that the road was necessary." That was proof that they had come to the conclusion in relation to which he was asked, and

the additional evidence could not prejudice the defendant. I may add that the objection to the question was general, no ground of objection whatever being stated. It was, therefore, properly overruled.

The evidence, to which I have already referred, tending to prove that the defendant, as commissioner and overseer of highways, had worked this road, was also objected to; but the views above expressed by me, as to its effect, show that it was harmless; it is consequently unnecessary to examine whether it was admissible or not.

The only remaining question to be considered is raised by the point of the appellant's counsel " that the proceedings to lay out the road were wholly defective, in not assessing the damages of the owners (the heirs of Heckart), by a commissioner and two assessors, and the owners, in the absence of this, may fence up the pretended road." He claims that this defect appears, 1st, from the fact that the assessment being made by a jury in 1846, was wholly illegal and void, because the act of 1845 (Session Laws of that year, chap. 180, § 5), required it to be made by a commissioner and the assessors. And 2d, because no damages were assessed to the owners of the land in question. It appears by the assessment, that the only damages assessed were those sustained by James Hughson and Samuel Boyer, and which were determined and fixed at seventy-five dollars, but they were afterward increased, by the board of supervisors, to one hundred dollars. Hughson was the owner of a part of the land included within the highway, and Boyer was the occupant of the residue, which was owned by the heirs of Heckart. The act of 1845 took effect on the first day of July in that year, and all statutory provisions inconsistent therewith were thereby repealed. (§§ 36 and 37.)

The order of the judges bears date on the 15th day of May, 1845, and the certificate of assessment is signed by six freeholders, and is dated 4th April, 1846, and a certificate is written below it, signed by two justices of the said town, bearing date the same day, certifying that the above was a verdict of

the jury drawn and sworn by them to assess the damages sustained by James Hughson and Samuel Boyer, by the laying out of the highway mentioned in the said verdict.

It was shown by the records of the board of supervisors of the county of Chemung that proceedings in reference to that road were had by it in the year 1846, and none other were to be found therein, and that the board, after an examination of the matter, and a report thereon, by a committee, had come to the conclusion that the actual damage sustained by said Hughson and Boyer was one hundred dollars, and an indorsement appears on the certificate of assessment in the following terms, viz: " The board of supervisors having inquired into the assessment of the jury in the within assessment, have decided the damages sustained by the persons through which the highway is laid, and do assess the damages one hundred dollars, ($100.")

It is evident from the preceding reference to the assessment proceedings, that they were had under the provisions of the Revised Statutes, which were clearly inconsistent with the act of 1845, and consequently repealed thereby.

The fact of such repeal, and the consequent illegality of the assessment, do not appear to have been, in any manner, referred or alluded to on the trial. When the assessment was offered in evidence it was objected to " on the ground that it was not properly proven, and upon the further ground that said assessment was not to the owners of the land; that the same was joint and not a several assessment of the damages of each owner or occupant of the land through which said road ran." It is questionable, therefore, whether its invalidity on the ground that it was not made under the act of 1845, can, on the present appeal, be available in this court, on the exception taken to its admissibility in evidence. (See *Vose* v. *Cockcroft*, 44 N. Y., 415; *Delany* v. *Brett*, decided by this Commission at the September term, 1872, 51 N. Y., 78; *Hackett* v. *Belden* 47 N. Y., 624). I deem it, however, unnecessary, in the view hereinafter taken as to the necessity of any assessment being made, before there can be

a valid highway, to consider that question; nor whether the invalidity of the assessment, admitted in evidence, can, upon the authority of *Low* v. *Hall*, 47 N. Y., 104, be made available to reverse the judgment under the general exception taken by the appellant's counsel to the direction of the judge on the trial "to render a verdict in favor of the plaintiffs against the defendant for the sum of twenty-five dollars," it having been admitted that he had obstructed the road in controversy five times.

Assuming the assessment to be illegal, I, nevertheless, am constrained to decide, contrary to my individual opinion as to the constitutional provision in force when this highway was laid out, declaring that private property shall not be taken for public use without just compensation, that under decisions of our courts, which must be deemed to settle the question as *res adjudicata* (so far as it relates to highways laid out in *towns*, under our highway laws applicable to those), that the plaintiff, as owner of the land through which the road in question was laid, had no right to obstruct it by the erection of fences on or across the same, notwithstanding the fact that neither those from whom he derived title, nor he, himself, had ever been paid any damages sustained by them by reason of the laying out and opening such road, and that such damages had never been assessed, and consequently that, by making such obstruction, he made himself liable for the penalties prescribed therefor. It is held by those decisions that the individual whose land is taken for such a highway, obtains the just compensation to which he is entitled on being provided with a legal *remedy* to collect it, although the prosecution and enforcement of it, may subject him to costs and expense, which will necessarily, in all cases, reduce, and, in some, may absorb the entire compensation that may be awarded to him.

The principle was decided in *Rogers* v. *Bradshaw*, (20 John. R., 735), by the court for the Correction of Errors in 1823, that when the legislature authorized private property to be taken for the use of the *State*, it was sufficient to "*make provision*

*for compensation,"* and that it was not necessary that the amount of such compensation should be actually paid or ascertained before the appropriation thereof; that was a case arising under the act of 1817 (chapter 262), relative to canals, which provided for ascertaining compensation for lands, etc., appropriated therefor when not given or granted to the State through the agency of appraisers to be appointed by the Supreme Court, and for the payment thereof, when so appraised, by the canal commissioners.

At the time that act was passed, and the question involved in that decision arose, there was no provision in our State Constitution on the subject; but that to which a reference has been made was introduced into the Constitution established and adopted in 1821. It was, however, as stated by SPENCER, Ch. J., on giving the opinion of the Supreme Court on deciding the same case (20 J. R., 103), only "declaratory of a great and fundamental principle of government." The question was again discussed by the court for the Correction of Errors, in *Bloodgood* v. *The Mohawk and Hudson River Railroad Company* (18 Wend., 9), although the principle, as it will be hereafter seen, was not decided therein, and after several opinions were delivered, the judgment, which had been rendered therein in the Supreme Court in favor of the defendants, was reversed on the ground, as stated in the judgment of the court for the Correction of Errors, set forth at the end of the report, that by the true construction of their charter or act of incorporation they were not authorized to take the plaintiff's land to their use for the purpose of making their railway thereon until his damages were appraised and paid or deposited for his use, as provided for in the act of incorporation, after declaring and adjudging another question presented and involved in the case that "the legislature of this State has the constitutional power and right to authorize the taking of private property for the purpose of making railroads or other public improvements of the like nature, paying the owners of such property a full compensation therefor, whether such improvements be

made by the State, itself, or through the medium of a corpo-
ration or joint stock company." The chancellor and other
members of the court considered the question whether
land could be taken *in any case* without previously, or
at the time of such taking, making compensation there-
for by *actual* payment; it was said by one of them (and
he questioned the decision of the Court of Errors in *Rogers*
v. *Bradshaw, supra*), that in taking land for highways, the
property was allowed to be taken and used before payment,
for the reason that the faith and solvency of the town were
pledged to the owner that payment therefor to him should cer-
tainly be made without hazard or doubt ; and another said that
in such a case "the fund from which compensation is secured
is a public one, and certain, and the means for ascertaining
the damages and for reaching the fund are defined, specific
and at the command of the party injured ; " but, as has been
before stated, that question was not really involved in the
case.

Without referring to any cases reported after that decision
until 1849, I call attention to that of *Smith* v. *Helmer* (7
Barb., 416), where it is said by ALLEN, J, in considering the
constitutional provision, near the end of his opinion, with
reference to a special act authorizing the construction and
alteration of a highway, that "it is now well settled that
the law under which the defendant justifies, not making the
assessment and payment of damages a condition precedent to
an entry upon and occupation of the premises for the pur-
poses of the road, it is sufficient that the act makes provision
for compensation to the owner, and the assessment and pay-
ment need not precede such entry and occupation." And
WELLES, J, in *Wallace* v. *Karlenowefski* (19 Barb., 118),
decided in 1854, while deciding that the act, then the subject
of examination, was unconstitutional and void, because no
compensation was required to be made to the owner, said
that if it " had provided means whereby compensation could
be obtained, it would have been a compliance with the con-
stitutional provision." A reference to other authorities is

unnecessary. It must be deemed established by those referred to, in which the question was, in fact; decided, and by the opinions of learned judges, expressed in those where it was not necessarily involved, but declared and assumed to be the law, that the security provided for an *early* as well as *certain* payment of compensation under the general highway laws, by means of a *general tax*, to be collected with the other moneys raised annually for taxation, is a compliance with the provision of the constitution declaring that private property shall not be taken for public use without just compensation, and, consequently, that the defendant was not justified in erecting the obstructions for which the penalties were recovered.

I deem it proper, so as to prevent misapprehension from what has been said, to add that I do not mean to be understood as holding that a provision made by a *local special assessment*, imposed on lands adjoining those taken, for raising the money required to make payment therefor (but the collection of which may be, and practically in many cases, is deferred for an unreasonably long time), comes within the principle or doctrine of those decisions, or that it is a compliance with the constitutional requirements as to making compensation. Such is not my understanding of the law or of the effect of those decisions, and it is said by NELSON, Ch. J., in *The People* v. *Hayden* (6 Hill, 359), that "although it may not be necessary, within the constitutional provision, that the amount of compensation should be actually ascertained and paid before property is thus taken, it is, I apprehend, the settled doctrine, even as respects the State itself, that at least *certain* and ample provision must be first made by law (except in cases of public emergency), so that the owner can *coerce payment* through the judicial tribunals, or otherwise, *without any unreasonable or unnecessary delay;* otherwise the law making the appropriation is no better than blank paper," and, I think, our experience justifies us in saying that payment under such *special* assessments, is not, as a general rule, realized or

secured within a reasonable period, but is, on the contrary, unreasonably deferred.

My conclusion upon the whole case is, that there is no ground for the reversal of the judgment appealed from; it must consequently be affirmed, with costs.

All concur; Gray, C., not sitting.

Judgment affirmed.