### CONNECTICUT RIVER RAILROAD COMPANY *v.* COUNTY COMMISSIONERS OF FRANKLIN.

Franklin.    January 24; February 7. — June 24, 1879.

The St. of 1878, *c.* 277, authorizing the manager of a railroad owned by the Commonwealth to take land for a passenger station for the use of that and other railroads, and providing no other mode of compensation to the owner of the land so taken than that such land shall be paid for from the earnings of the railroad owned by the Commonwealth, is unconstitutional, even if such earnings will probably be sufficient to meet all claims for land damages.

The owner of land taken, by the manager of a railroad owned by the Commonwealth, under a statute which does not make adequate provision for the payment of compensation for the land so taken, may have a writ of prohibition to the county commissioners to prevent them from proceeding with the assessment of the damages caused by the taking.

PETITION for a writ of prohibition. The case was heard and reserved by *Soule,* J., upon the petition and answer, for the determination of the full court, and is stated in the opinion. It was first argued at the bar, and was afterwards submitted on briefs to all the judges.

*N. A. Leonard,* for the petitioner.

*C. Delano,* for the respondents.

GRAY, C. J.   By the St. of 1878, *c.* 277, it is enacted that the manager of the Troy and Greenfield Railroad and Hoosac Tunnel (of which the Commonwealth, under previous statutes, had become the owner) shall, under the direction of the Governor and Council, construct a union passenger station in Green-

field, to be used for the Connecticut River Railroad Company, the Fitchburg Railroad Company, and other corporations using or operating the Vermont and Massachusetts Railroad, and by all corporations using or operating the Troy and Greenfield Railroad in Greenfield, and by the said manager and his employees for their purposes. This statute contains the following sections :

" SECT. 6. For the purposes of this act, the said manager, under direction of the Governor and Council, may take all land necessary, from land of the Connecticut River Railroad Company or other parties, in manner provided by law for the taking of land for depot and station purposes by railroad corporations, so far as the same may apply : provided, that for the purposes of this act no land of the Connecticut River Railroad Company lying easterly of Clayhill Street, or the highway leading therefrom from Greenfield to Deerfield, or within four feet of the westerly rail of their main track, shall be taken without the consent of said company. The land taken under the provisions of this section shall be paid for from the earnings of the Troy and Greenfield Railroad and Hoosac Tunnel. All persons or corporations, aggrieved by any award of damages for land so taken, shall have a right to trial by jury thereon in manner provided by law in such cases."

" SECT. 8. For the purposes of this act, a sum not exceeding nine thousand dollars is hereby appropriated, to be paid from the earnings of the Troy and Greenfield Railroad and Hoosac Tunnel."

The Governor and Council, acting under the provisions of this statute, directed said manager to enter upon and take a parcel of land of the Connecticut River Railroad Company, situated on the westerly side of Clayhill Street in Greenfield, for such a station ; and on December 9, 1878, the manager entered and took possession thereof accordingly, and presented a petition to the county commissioners of the county of Franklin, praying them to determine and award such damages to the Connecticut River Railroad Company, for the taking of its land, as might seem just. The Connecticut River Railroad Company, having been served with notice of that petition, appeared by counsel before the county commissioners, and objected to their assess-

ing and determining such damages, or assuming any jurisdiction in the premises. But the county commissioners overruled the objection, and postponed further hearing on that petition to a future day.

The Connecticut River Railroad Company thereupon applied to a justice of this court for a writ of prohibition to the county commissioners, upon the ground that this statute is unconstitutional, because no provision is made, therein or otherwise, for the reasonable compensation of the Connecticut River Railroad Company for the land so taken, and therefore the county commissioners have no jurisdiction to assess the damages. It is alleged in the answer of the county commissioners, and agreed in writing filed in the case to be the fact, that "the earnings of the Troy and Greenfield Railroad, out of which said land damages are payable, will probably be amply sufficient to meet and extinguish all future, as they have all recent, claims for land damages."

Two questions are presented by the case, and have been argued by counsel: First. Whether the St. of 1878, c. 277, is unconstitutional, for want of a sufficient provision for the payment of compensation for the land taken? Second. Whether the writ of prohibition is a suitable remedy?

The Constitution of the Commonwealth declares that, "whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor." Declaration of Rights, art. 10. It has long been settled by the decisions of this court, that a statute which undertakes to appropriate private property for a public highway of any kind, without adequate provision for the payment of compensation, is unconstitutional and void, and does not justify an entry on the land of the owner without his consent. *Commonwealth* v. *Peters*, 2 Mass. 125. *Perry* v. *Wilson*, 7 Mass. 393. *Thacher* v. *Dartmouth Bridge*, 18 Pick. 501. "Under our Constitution," said Chief Justice Shaw, "the act conferring the power must be accompanied by just and constitutional provisions for full compensation to be made to the owner. If the government authorizes the taking of property, for any use other than a public one, or fails to make provision for a compensation, the act is simply void; no right

of taking as against the owner is conferred; and he has the same rights and remedies against a party acting under such authority, as if it had not existed." *Boston & Lowell Railroad* v. *Salem & Lowell Railroad,* 2 Gray, 1, 37. So in a case of laying out as a public highway a bridge owned by a private corporation, Mr. Justice Colt said: "The duty of paying an adequate compensation, for private property taken, is inseparable from the exercise of the right of eminent domain. The act granting the power must provide for compensation, and a ready means of ascertaining the amount. Payment need not precede the seizure; but the means for securing indemnity must be such that the owner will be put to no risk or unreasonable delay." *Haverhill Bridge* v. *County Commissioners,* 103 Mass. 120, 124.

In *Rogers* v. *Bradshaw,* 20 Johns. 735, 744, cited by the learned counsel for the respondents, the decision was that the statutes applicable to the case, construed together, expressly provided for the estimate and payment of the damages, and that such payment need not be actually made before the entry upon the land; and the *dictum* of Chancellor Kent, that an omission of the Legislature to provide for compensation might not have made the entry a trespass, is opposed to the course of decisions in this Commonwealth, and has not been followed in New York. In *Bloodgood* v. *Mohawk & Hudson Railroad,* 18 Wend. 1, 17, Chancellor Walworth, while admitting that the Legislature might authorize the land of an individual to be entered upon for the purpose of examination or of making preliminary surveys, without compensation, said: "But it certainly was not the intention of the framers of the Constitution to authorize the property of a citizen to be taken and actually appropriated to the use of the public, and thus to compel him to trust to the future justice of the Legislature to provide him a compensation therefor. The compensation must be either ascertained and paid to him before his property is thus appropriated, or an appropriate remedy must be provided, and upon an adequate fund; whereby he may obtain such compensation through the medium of the courts of justice, if those whose duty it is to make such compensation refuse to do so. In the ordinary case of lands taken for the making of public highways, or for the use of the state canal,

such a remedy is provided; and if the town, county or state officers refuse to do their duty in ascertaining, raising or paying such compensation in the mode prescribed by law, the owner of the property has a remedy by mandamus to compel them to perform their duty. The public purse, or the property of the town or county upon which the assessment is to be made, may justly be considered an adequate fund. He has no such remedy, however, against the Legislature to compel the passage of the necessary laws to ascertain the amount of compensation he is to receive, or the fund out of which he is to be paid." And in *People* v. *Hayden*, 6 Hill, 359, 361, Chief Justice Nelson said: " Although it may not be necessary, within the constitutional provision, that the amount of compensation should be actually ascertained and paid before property is thus taken, it is, I apprehend, the settled doctrine, even as it respects the state itself, that, at least, certain and ample provision must be first made by law, (except in cases of public emergency,) so that the owner can coerce payment through the judicial tribunals or otherwise, without any unreasonable or unnecessary delay." See also *Rexford* v. *Knight*, 1 Kernan, 308, 314; *Chapman* v. *Gates*, 54 N. Y. 132, 146.

Statutes taking private property for a public highway, and providing for the ascertaining of the damages, and for payment thereof out of the treasury of the county, town or city, have often been held to be constitutional. *Haverhill Bridge v. County Commissioners*, 103 Mass. 120. *Chapman* v. *Gates*, 54 N. Y. 132. *Loweree* v. *Newark*, 9 Vroom, 151. *Yost's Report*, 17 Penn. St. 524. *Powers* v. *Bears*, 12 Wis. 213, 220. *Commissioners* v. *Bowie*, 34 Ala. 461. But, in the cases in which it has been so held, the liability to pay the damages rested upon the whole property of the inhabitants of the municipality, and might be enforced by writ of execution or warrant of distress, or by mandamus to compel the levy of a general tax. *Hill* v. *Boston*, 122 Mass. 344, 350. *Rose* v. *Taunton*, 119 Mass. 99, 101. *Bloodgood*, v. *Mohawk & Hudson Railroad*, and *Rexford* v. *Knight*, above cited. *Commonwealth* v. *Commissioners of Allegheny*, 37 Penn. St. 237, 277. *Minhinnah* v. *Haines*, 5 Dutcher, 388. *Brock* v. *Hishen*, 40 Wis. 674. The rule has not been extended to cases in which only a special fund was charged with the

payment of the damages, and the municipality had no power to levy a general tax to pay them. *Chapman* v. *Gates,* 54 N. Y. 146. *Keene* v. *Bristol,* 26 Penn. St. 46.

In *Ash* v. *Cummings,* 50 N. H. 591, 621, it was said : " In cases where the state, or a county, or a town, is to be made liable for the damages which an individual may suffer by having his property taken for the public use, it is not so important that the compensation should be paid or secured in advance, provided the law provides a certain and expeditious way of ascertaining and recovering it, because there the presumption and the fact are that these municipalities are always responsible." And the saying was quoted with approval by a majority of the court in *Orr* v. *Quimby,* 54 N. H. 590, 594. But in each case it was *obiter dictum.* *Ash* v. *Cummings* was the case of a mill-dam erected by one individual to the injury of another. In *Orr* v. *Quimby,* it was admitted that the only question to be determined was whether the defendant had the right to enter and cut trees on the plaintiff's land, and that the question whether the land could be permanently occupied without assessment and payment of damages did not arise; 54 N. H. 596 ; and the position assumed in the *dictum* above quoted was strongly controverted in an elaborate dissenting opinion of Mr. Justice Doe, as it had previously been in an able judgment of the Supreme Court of Maine, delivered by Chief Justice Shepley. *Cushman* v. *Smith,* 34 Maine, 247.

When private property is taken directly by the Commonwealth for the public use, it is not necessary or usual that the Commonwealth should be made subject to compulsory process for the collection of the money to be paid by way of compensation. It is sufficient that the statute which authorizes the taking of the property should provide for the assessment of the damages in the ordinary manner, and direct that the damages so assessed be paid out of the treasury of the Commonwealth, and authorize the Governor to draw his warrant therefor ; because, as observed by Chief Justice Bigelow, " This is clearly an appropriation of so much money as may be necessary to pay the damages which may be assessed under the act." " It is a pledge of the faith and credit of the Commonwealth, made in the most solemn and authentic manner, for the payment of the damages as soon

as they are ascertained and liquidated by due process of law." *Talbot* v. *Hudson*, 16 Gray, 417, 431.

But in the statute before us there is no pledge of the faith and credit of the Commonwealth, no appropriation of the general funds in its treasury, and no authority to the Governor to draw his warrant for the payment of the damages out of such funds. On the contrary, the very terms of the statute preclude the inference of any such pledge, appropriation or authority, by directing that the land taken for the union passenger station shall be paid for from the earnings of the Troy and Greenfield Railroad and Hoosac Tunnel, and appropriating for the purposes of the act a sum not exceeding nine thousand dollars to be paid out of those earnings. St. 1878, *c.* 277, §§ 6, 8. The fact, admitted by the parties, that those earnings will probably be sufficient to meet and extinguish all claims for damages for lands so taken, falls short of satisfying the requirement of the Constitution that the owner of property taken for the use of the public shall have a prompt and certain compensation, without being subject to any risk or unreasonable delay.

The provisions of the St. of 1878, *c.* 277, specifying and appropriating a certain sum out of those earnings for the payment of damages assessed under this act, are equally conclusive against the suggestion made, though not strongly pressed, at the argument, that the Commonwealth, or the manager acting in its behalf, may be required by the county commissioners, at the request of the landowner, to give additional security for the payment of the damages under the general railroad act of 1874, *c.* 372, § 65. Sections 69 and 72 of that act, providing that, if the railroad corporation shall not pay the amount of damages awarded by the jury, a warrant of distress or execution may issue to compel the payment thereof, and that, until such warrant or execution is satisfied, all right and authority to enter upon the land, except for making surveys, shall be suspended, and the exercise t ereof may be restrained by injunction, are also inapplicable, because in the present case no warrant of distress cr execution can issue, either against the manager or against the Commonwealth; not against the manager, because he takes no title himself in the land, but is a mere agent of the Commonwealth, acting under the direction of the Governor and Coun

cil, and removable at their pleasure; Sts. 1875, *c.* 77; 1876, *c.* 150; 1878, *c.* 191; not against the Commonwealth, because the Commonwealth is never liable to judicial suit or process, except so far as its own consent thereto has been clearly manifested by statute. *Troy & Greenfield Railroad* v. *Commonwealth, ante,* 43.

The St. of 1878, *c.* 277, therefore, so far as it purported to authorize the taking of land of the Connecticut River Railroad Company for a union railroad station, was unconstitutional, and the taking under that act was void, for want of any provision for adequate and certain compensation to the owner.

That taking, being unauthorized and void, did not alter the rights of the owner of the land, vested no title in the Commonwealth, and could not be the basis of a petition to the county commissioners for the assessment of damages as for land lawfully appropriated to the public use. The invalidity of the taking and the consequent want of jurisdiction in the county commissioners are not cured by the St. of 1879, *c.* 290, passed since this case was argued, and providing that the sums of money required under the St. of 1878, *c.* 277, shall be paid from the treasury of the Commonwealth, instead of from the earnings of the Troy and Greenfield Railroad and Hoosac Tunnel. The statement of Mr. Justice Baldwin, in *Bonaparte* v. *Camden & Amboy Railroad,* Bald. 205, 226, that it is not indispensable that a law permanently appropriating private property to the use of the public should contain a provision for compensation, or prescribe the mode of making it, but that such a law would be valid if the Legislature should by a subsequent law direct compensation to be made, appears to have been founded on the *dictum* of Chancellor Kent referred to in the early part of this opinion, and is inconsistent with the settled law of this Commonwealth, and with the weight of authority elsewhere.

We have no information of any new taking of the land since the passage of the St. of 1879, and the remaining question is whether, upon the facts appearing on the record, a writ of prohibition should issue.

A writ of prohibition issuing from the highest court of common law is the appropriate remedy to restrain a tribunal of peculiar, limited or inferior jurisdiction from taking judicial cognizance of

a case not within its jurisdiction. 3 Bl. Com. 112. *Washburn* v.
*Phillips*, 2 Met. 296. The power of issuing the writ was habitu-
ally exercised by the principal courts of common law in England,
and by the Superior Court of Judicature of Massachusetts under
the Province Charter. The earlier acts of the Province estab-
lishing the Superior Court of Judicature were disallowed by the
King in Council. Prov. Sts. 1692–3 (4 W. & M.) *c.* 33 ; 1697
(9 Will. III.) *c.* 9 ; 1 Prov. Laws (State ed.) 72, 73, 284, 285 ;
Anc. Chart. 217, 221. But the act of 1699–1700 (11 Will. III.)
*c.* 3, under which that court existed until the American Revo-
lution, conferred upon it a very extensive jurisdiction of pleas
of the crown and civil actions, "and generally of all other mat-
ters, as fully and amply to all intents and purposes whatsoever
as the Courts of King's Bench, Common Pleas and Exchequer
within his Majesty's kingdom of England have or ought to
have." 1 Prov. Laws, 370, 371 ; Anc. Chart. 330. Under that
act, the Superior Court of Judicature frequently issued writs of
prohibition to the Court of Vice Admiralty. See, for examples
of this, *Thomas* v. *Calley*, Rec. 1716, fol. 143 ; *Hutchinson* v.
*Wybourne*, Rec. 1716, fol. 169; *Harminy* v. *Wyre*, Rec. 1717, fol.
177 ; *Manderson* v. *Hughs*, Rec. 1718, fol. 259 ; *Tilton's case*,
Rec. 1720, fol. 338 ; Dummer's Defence of the New England
Charters (1721) 63, 64; *Scollay* v. *Dunn* (1763) Quincy, 74.

By early statutes of the Commonwealth it was provided that
this court should have cognizance of all such matters as by the
laws of the Province were made cognizable by the Superior Court
of Judicature, unless where the Constitution had provided other-
wise ; and should have power to issue all writs of prohibition
and mandamus, according to the law of the land, to all courts
of inferior judiciary powers. Sts. 1780, *c.* 17 ; 1782, *c.* 9, § 2.
In each subsequent revision of the statutes it has been provided
that this court "shall have the general superintendence of all
courts of inferior jurisdiction, to prevent and correct errors and
abuses therein, where no other remedy is expressly provided by
law ; " and "shall have power to issue writs of error, certiorari,
mandamus, prohibition and *quo warranto*, and all other writs
and processes to courts of inferior jurisdiction, to corporations
and individuals, that shall be necessary to the furtherance of
justice and the regular execution of the laws." Rev. Sts. *c.* 81,

§§ 4, 5. Gen. Sts. *c.* 112, § 3. This court, therefore, is vested with ample power to issue writs of prohibition, in proper cases, where there is no other adequate remedy; although, since the jurisdiction of cases in admiralty and of issuing writs of prohibition in such cases has been transferred to the courts of the United States by the federal Constitution and statutes, and this. court has been vested with the jurisdiction of divorce cases and of probate appeals under the Constitution and laws of the Commonwealth, these writs have become less common, and but few instances of applications for them are to be found in our reports. *Washburn* v. *Phillips*, above cited. *Gilbert* v. *Hebard*, 8 Met. 129. *Vermont & Massachusetts Railroad* v. *County Commissioners*, 10 Cush. 12. *Day* v. *Aldermen of Springfield*, 102 Mass. 310.

In the present case, if the proceedings for the assessment of damages had gone on to final judgment, they might indeed have been quashed by writ of certiorari. *Charlestown Branch Railroad* v. *County Commissioners*, 7 Met. 78. *Charles River Branch Railroad* v. *County Commissioners*, 7 Gray, 389. *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206. But the fact that the remedy by petition for writ of certiorari will be open to the landowner after final judgment affords no reason why the court should now refuse a writ of prohibition, and thereby put the petitioner to the trouble, expense and delay of a trial before a tribunal which has no jurisdiction of the case, and to whose jurisdiction the petitioner has objected at the outset of the proceedings. *Gould* v. *Gapper*, 5 East, 345, 367, 371. *Burder* v. *Veley*, 12 A. & E. 233, 263, 265, 313, 314. *Vermont & Massachusetts Railroad* v. *County Commissioners*, above cited. The relief sought by bill in equity in *Talbot* v. *Hudson*, 16 Gray, 417, was to restrain the pulling down of a mill-dam by executive officers, not to prevent a judicial hearing and determination by a tribunal transgressing its jurisdiction.

The fact that an agent of the Commonwealth is the adverse party in the proceedings before the county commissioners affords no reason for refusing the writ. A writ of prohibition, like a writ of mandamus or of certiorari, is properly sued out in the name of the Crown or the State; the only necessary defendant is the tribunal whose proceedings are sought to be restrained,

controlled or quashed; and there is no class of cases in which the authority to issue writs of prohibition is better established than in those of courts martial, ecclesiastical courts, or inferior courts of common law, assuming to take cognizance, in excess of their jurisdiction, of criminal prosecutions. *Washburn* v. *Phillips*, above cited. *Grant* v. *Gould*, 2 H. Bl. 69. Com. Dig. Prohibition, F. 6. *Searle* v. *Williams*, Hob. 288. *The Queen* v. *Herford*, 3 El. & El. 115. *Zylstra* v. *Corporation of Charleston*, 1 Bay, 382.                          *Writ of prohibition to issue.*