### THE UNITED STATES *vs.* DUMPLIN ISLAND.

Proceedings to ascertain the damages of the owner of land taken by the United States, under the act of May 5, 1847, (*Laws of* 1847, *p.* 189,) need not be instituted by, or in the name of, the governor of this state.

It is his duty to apply, as chief magistrate, only when the land of a private citizen is wanted for the use of the state.

The statute which directs that when land is wanted for the use of the United States,

and it becomes necessary to issue a writ of inquiry of damages, the like proceedings shall be had as upon applications on behalf of the state, is sufficiently complied with, as respects the manner of commencing the proceedings, if they are instituted in behalf of the United States, by officers authorized to act for the executive, in the premises.

The inquisition taken under a writ *ad quod damnum* should find who is the owner of the land taken, the amount of the damages, and to whom the same are to be paid. It should also provide for the payment of the owner's costs and expenses.

By the act of May 5, 1847, (*Laws of 1847, p.* 189,) jurisdiction of a small island in Long Island sound called the North Dumplin, was ceded to the United States for the purpose of erecting a lighthouse thereon; and the United States were authorized, in case they could not agree with the owner, for the purchase of it, to apply for the writ *ad quod damnum*, under the revised statutes, (2 *R. S.* 588,) to assess the owner's damages. A writ of *ad quod damnum* having been issued and executed,

*B. F. Butler*, U. S. district attorney, moved to confirm the inquisition taken under the same.

*T. Sedgwick*, for the owner of the island, objected, 1. That these proceedings ought to have been instituted by the governor of the state, and could not be commenced by any other person or officer; 2. That it is not competent for the state to assign to the United States its eminent domain for any purpose foreign to the use of the state; and 3. That the inquisition does not find who is the owner, nor to whom the money is to be paid, nor does it provide for the owner's costs and expenses, but only for the value of the land.

*F. F. Marbury*, in behalf of John Van Buren, attorney general of the state, moved for a reference to ascertain to whom the amount of the award should be paid.

EDMONDS, J. I do not think there is any thing in the objection that these proceedings are to be instituted by, and in the name of the governor of this state. It is his duty to apply, as chief magistrate, only when the land is wanted for the use of

the state. When land is wanted for the United States, and it becomes necessary to issue a writ of inquiry, the statute (2 *R. S*. 590, § 76,) provides that the *like proceedings* shall be had as those directed upon applications on behalf of the state. The proceedings will be to all intents and purposes alike if the chief magistrate of the United States directs the proceedings to be instituted; and it is not necessary for him to institute the proceedings personally. It is enough, if it is done in behalf of the United States, by officers authorized to act for the executive in the premises.

I see then no irregularity in the proceedings previous to the issuing of the writ *ad quod damnum*. But I confess I am not satisfied with the inquisition. When the proceedings are instituted for the state, § 73 of the statute provides amply for the payment of damages and all costs and expenses incurred. So that the owner can be insured not merely the value of the land, but all costs and expenses to which he may be subjected, as well in procuring a proper valuation of his land, as in obtaining the money afterwards. But when the application is for the United States, no such provision is made; and unless those costs and expenses are included by the jury in their appraisal of the "damages," the owner must pay them himself; and the assessment, if it is only of the value of the premises, would necessarily fall short of adequate remuneration to the owner. The difficulty in the case is, that I do not know, and cannot from the papers determine, whether the jury have taken this view of their duty or not. If they had, I should be more likely to be satisfied with their appraisement.

But there would still be left another difficulty, and one which in this case would be somewhat material. The statute requires that the inquisition shall ascertain the names of the owners, their rights respectively, the amount to be paid, *and to whom particularly.*

The inquisition returns that the island is owned by William H. Winthrop, according to the best evidence furnished before the jury, and that the owner will sustain damage to the amount of $400: but it is entirely silent as to whom the money shall

be paid, as required by the statute. If the inquisition had found that, the money should be paid to Mr. W., then under the 75th section of the statute, he might obtain his money on presenting a petition to the court. But now if this inquisition is confirmed, on Mr. W.'s presenting his petition for the money in court, there must necessarily be a reference to ascertain to whom it ought to be paid. The attorney general already asks for such a reference. The expense of the reference would necessarily be defrayed from the fund ; and for aught that I see, the owner may be subjected to the expense of attending the appraisement, and of getting his pay afterwards ; thus it would seem preventing the award of the jury from being a just compensation to him, when the statute has been careful to provide that he shall be indemnified for the injury that he may sustain by reason of his lands being taken for the use of the public.

This inquisition must therefore be set aside, and a new one taken to supply these defects.

