In the Matter of the Petition of the UNITED STATES for the Appointment of Commissioners, etc.

The State legislature may authorize proceedings in the State courts on behalf of the Federal government to acquire title to lands for a public use, the benefit of which is shared by the citizens of the State, and while the Federal government may, as an independent sovereignty, condemn lands within a State for its use, by proceedings in its own courts, it may, as a petitioner in a State court, accomplish the same end through proceedings under a State law.

*It seems* that the State may accept aid offered by the United States in carrying on a public work in which both are interested.

*Trombley* v. *Humphrey* (23 Mich. 481), *Kohl* v. *U. S.* (91 U. S. 367), *Darlington* v. *U. S.* (82 Penn. St. 382), distinguished.

While private property may not be taken for public purposes without just compensation, this need not be given in all cases at the time of the actual exercise of the right of eminent domain; it is sufficient if an actual and certain remedy is provided whereby the owner may compel payment of his damages before he is required to part with his property.

Accordingly *held*, that as before any land had been taken under the act entitled "An act granting to the United States the right to acquire the right of way necessary for the improvement of the Harlem river and Spuyten Duyvil creek for the construction of another channel from the North river to the East river through the Harlem kills and ceding jurisdiction over the same (Chap. 147, Laws of 1876), by the various amendments to said act (Chap. 345, Laws of 1879; chap. 65, Laws of 1880; chap. 61, Laws of 1881; chaps. 377, 410, Laws of 1882 : chap. 214, Laws of 1883), certain and suitable provision was made to compensate the owners for lands taken, the defect in the original act in this respect was no objection to proceedings instituted under it.

Also *held*, that the said act was not violative of the provision of the State Constitution (Art. 3, § 16), providing that "no private or local bill * * * * shall embrace more than one subject and that shall be expressed in the title."

(Argued May 7, 1884 ; decided June 3, 1884.)

THE nature of the appeal and the material facts are set forth in the opinion.

*Franklin Bartlett* for appellant Henry W. T. Mali. The motion is properly made on the ground that the acts under which the application to the court for the appointment of the commissioners was made, and the acts under which all the proceedings herein have been conducted, are unconstitutional and void. (*Matter of City of Buffalo*, 78 N. Y. 362; *Matter of Dept. Public Parks*, 85 id. 459; *Matter of Appl'n Dept. Pub. Parks*, 86 id. 437; *Matter of Edward Cooper*, 28 Hun, 515.) The State of New York cannot condemn lands for the use of the general government, because the right of eminent domain cannot be exercised by one sovereignty for the uses of another. (*Coggs* v. *Bernard*, 2 Ld. Raym. 911; Mills on Eminent Domain, §§ 1, 347; *Ballard* v. *Hogan*, 3 How. [U. S.] 223; Grotius, lib. 1, chap. 1, § 6; *West River Bridge Co.* v. *Dix*, 6 How. [U. S.] 536, 540; *Boom Co.* v. *Patterson*, 8 Otto, 403, 406; *Bloodgood* v. *Mohawk & Hud. R. R. R. Co.*, 18 Wend. 30; *Bogert* v. *U. S.*, 2 Ct. of Claims, 164; *U. S.* v. *R. R. Bridge Co.*, 6 McLean, 535; Cooley on Const. Lim. 524, 525, 526, marg.; *Weber* v. *Harbor Commrs.*, 18 Wall. 65, 66; 23 Mich. 474, 475, 476, 481, 482; *Kohl* v. *U. S.*, 1 Otto, 367, 371; *Van Horne's Lessee* v. *Dorrance*, 2 Dallas, 308; *Langdon* v. *Mayor, etc.*, 93 N. Y. 161; *Gilmer* v. *Lime Point*, 18 Cal. 229, 257; *Co. of Mobile* v. *Kimball*, 12 Otto, 699; Const. of Massachusetts, part 1, art. 10–12; *Burt* v. *Merchants' Ins. Co.*, 106 Mass. 362.) The right of eminent domain can be exercised by a State through agents, whether individuals or corporations, and the legislature may condemn land to the public use and employ as an instrument an individual or a copartnership of individuals residing in this or another State. (*St. Clair* v. *Cox*, 16 Otto, 355; *Beekman* v. *Sar. & Sch. R. R. Co.*, 3 Paige, 45; *Buffalo & N. Y. R. R.* v. *Brainard*, 9 N. Y. 100; *Matter of Peter Townsend*, 39 id. 175; 82 Penn. St. 382; *N. Y. & Erie R. R. Co.* v. *Young*, 33 id. 175, 180; *Holbert* v. *St. L., K. C. & N. R. Co.*,

45 Iowa, 26 ; *Bloodgood* v. *Mohawk & H. R. R. R. Co.*, 18 Wend. 62.)   The acts are unconstitutional in that the private property here condemned is not taken for a public use within the meaning of the Constitution and without just compensation.   (*Boodgood* v. *Mohawk & H. R. R. R. Co.*, 18 Wend. 35, 68 ; *Butler* v. *Sewer Commrs.*, 39 N. J. Law, 665, 670–3 ; *Sage* v. *City of Brooklyn*, 89 N. Y. 189 ; *Chapman* v. *Gates*, 54 id. 146 ; *Loomis* v. *Andrews*, 49 Cal. 239.)   These proceedings are unconstitutional and void, because there has been no due process of law.   (*Darlington Case*, 82 Penn. St. 386, 387 ; *Kohl* v. *Hannaford*, 4 Law Record, 372, 376 ; *State* v. *Jersey City*, 25 N. J. Law, 310 ; U. S. R. S., § 771 ; *Johnston* v. *Stimmel*, 89 N. Y. 121 ; *Carr* v. *U. S.*, 98 U. S. 437–438.)   The acts are unconstitutional and void, because it is sought thereunder to allow the city and county of New York to incur an indebtedness for other than city or county purposes. (*People, ex rel. Murphy*, v. *Kelly*, 76 N. Y. 487.)

*John M. Martin* for appellants Kemp and others.   If the State of New York has power to condemn the lands in question to the use of the United States government, it must be by virtue of its right of eminent domain.   (*Twombley* v. *Humphrey*, 23 Mich. 471 ; *Kohl* v. *U. S.*, 91 U. S. 371 ; *Matter of Albany St.*, 11 Wend. 151 ; Mills on Eminent Domain, § 347 ; *Darlington* v. *U. S.*, 82 Penn. St. 382.)   These acts are unconstitutional because the private property in question is not taken for public use within the meaning of the Constitution.   (*Bloodgood* v. *M. & H. R. R. R. Co.*, 18 Wend. 68.) The acts in question are invalid because they do not provide a sure, immediate and adequate compensation for the lands taken. (*Bloodgood* v. *M. & H. R. R. R. Co.*, 18 Wend. 35 ; *Butler* v. *Sewer Comm'rs*, 39 N. J. L. 665, 670, 673 ; *Sage* v. *City of Brooklyn*, 89 N. Y. 189 ; *People, ex rel. Utley*, v. *Hayden*, 6 Hill, 359 ; *Chapman* v. *Gates*, 54 N. Y. 146.)   Payment should be made before entry, and the provisions giving possession to the United States, pending an appeal, etc., are invalid. (*Loomis* v. *Andrews*, 49 Cal. 239.)   The proceedings are invalid because

there has been no due process of law. (*Kohl* v. *Hannaford*, 4 Am. Law Record, 372 ; *State* v. *Jersey City*, 25 N. J. L. 310 ; U. S. R. S., § 771 ; *Johnson* v. *Stimmel*, 89 N. Y. 121 ; *Carr* v. *U. S.*, 98 U. S. 437, 438 ; U. S. R. S., § 365.) The improvement of the navigation of the Harlem river is not a city purpose. (*People, ex rel. Murphy*, v. *Kelly*, 76 N. Y. 487.)

*Samuel E. Lyon* for petitioner, respondent. The acts under which the proceedings have been taken contain no delegation of right, but provide for the necessary legal means to enable the United States to improve a public highway in this State. (*In re Townsend*, 39 N. Y. 171 ; *Bloodgood* v. *M. & H. R. R. R. Co.*, 18 Wend. 9, 175, 181, 182.) A tax can be imposed by the legislature on those who are to be specially benefited by the improvement to compensate for the land condemned. (*People* v. *Mayor, etc.*, 4 Comst. 419, 436 ; *Livingston* v. *Mayor, etc.*, 8 Wend. 85–101 ; *Thomas* v. *Leland*, 24 id. 66 ; *People* v. *Lawrence*, 41 N. Y. 141.) The aid the city of New York is authorized to give under these acts is for a city purpose. (*People, ex rel. Murphy*, v. *Kelly*, 76 N. Y. 475.) These acts did not embrace more than one subject, and that was sufficiently expressed in their titles. (*Brewster* v. *City of Syracuse*, 19 N. Y. 117.)

*Fordham Morris* for owners of property affected, respondents. A State, in its sovereign capacity, has the power to delegate the right of eminent domain to foreign as well as domestic corporations, and the propriety of such delegation can only be questioned when the purposes for which the proceedings *in invitum* are to be taken are ones for which the State itself could not exercise eminent domain. (*Bloodgood* v. *M. & H. R. R. R. Co.*, 18 Wend. 9 ; *Haywood* v. *The Mayor*, 7 N. Y. 825 ; *Matter of Greenwood Lake*, 39 id. 171 ; *U. S.* v. *Dumplin Island*, 1 Barb. 24 ; *Pompelly* v. *Green Bay Co.*, 13 Wall. 166 ; Opinions of Att'y-Gen'ls of U. S., vol. 7, p. 114 ; *Reddale* v. *Bynes*, 14 Md. 444 ; *U. S.* v. *Reed*, 56 Mo. 565 ; *Gilmer* v. *Lime Rock*, 18 Cal. 229 ; *Orr* v. *Quimby*, 54 N. H.

591; *Burt* v. *M. Ins. Co.*, 106 Mass. 356.)   In this State, however, independent of any special statute, the United States is given jurisdiction in cases of *"ad quod damnum,"* and the United States authorities may petition.   (4 N. Y. R. S., chap. 9, art. 4, part 3, tit. 2, § 76 ; 2 Edmunds' N. Y. Statutes at Large, p. 612, m. p. 590 ; *U. S.* v. *Dumplin Island*, 1 Barb. 24.)   The State can exercise eminent domain for this purpose.   It has an inherent power to do so over its navigable waters.   (*Withers* v. *Buckley*, 20 How. [U. S.] 84 ; *Hollister* v. *Union Co.*, 9 Conn. 436 ; *U. S.* v. *Proprietors of N. B. Bridge*, 10 L. R. 127 ; *Glover* v. *Powell*, 2 Stockt. 211 ; *Binney's Case*, 2 Bland [Md.], 99 ; *Thames B'k* v. *Lovell*, 18 Conn. 500 ; Laws of 1873, chap. 613 ; Laws of 1876, chap. 188, p. 167 ; Laws of 1869, chap. 826 ; Laws of 1870, chap. 797 ; Laws of 1871, chap. 534, p. 1119 ; Laws of 1874, chap. 556, p. 747 ; Laws of 1875, chap. 612, p. 765.)   The legislature has a right to impose a tax or assessment upon a limited area whenever the public well-being requires or will be promoted by it, and the legislature is judge of what is for the public good, and whether it is a public use.   (*Town of Guilford* v. *Supvrs. of Chenango*, 13 N. Y. 143 ; *Thomas* v. *Leland*, 24 Wend. 65 ; *People, ex rel. Crowell*, v. *Lawrence*, 31 N. Y. 123 ; *People, ex rel. Murphy*, v. *Kelly*, 76 id. 475.)   The fund from which the payment of awards is to be made is certain, as by the later acts the comptroller of New York pays, and the money is obtained by taxation on one of the political divisions of the State.   (*Sage* v. *City of Brooklyn*, 89 N. Y. 189.)   Invoking the aid of United States officers to assist in State works is not an unusual exercise of legislative power in this State, and taxes are imposed by the State for such purpose.   (Laws of 1872, p. 2192 ; Laws of 1875, chap. 398, p. 472 ; Supply Bills, 1872, Laws of 1872, 1741 ; Supply Bills, 1873, Laws of 1873, 1148 ; Laws of 1875, 829 ; Supply Bill, 1876, p. 187.)   This proceeding should be upheld by the courts, as it is the carrying out of a compact between the United States and a State government.   (Laws of 1875, p. 816 ; *Searight* v. *Stokes*, 3 How. [U. S.] 162 ; *Neil, Moore & Co.* v. *State of Ohio*, id. 740 ; *Atcheson* v. *Hud-*

*dleston,* 12 id. 293 ; *U. S.* v. *Percheman,* 7 Peters, 651 ; *Meade* v. *U. S.,* 7 Ct. of Claims Cases, 161.)

*D. G. Crosby* for owners of property affected, respondents. Even if the acts under which the proceedings were taken are unconstitutional, the moving parties had no standing in court to make the motion upon which the order appealed from was made. (*People* v. *B. F. & C. I. R. R. Co.,* 89 N. Y. 92, 93 ; *Matter of Wellington,* 16 Pick. 96 ; Cooley on Constitutional Limitations, 180 ; *Livingston* v. *Mayor, etc.,* 8 Wend. 85 ; *L. I. R. R. Co.* v. *Bennett,* 10 Hun, 61 ; *People* v. *Mayor, etc.,* 4 Comst. 419.) The moving parties have waived whatever rights they may have had to make their motion. (*Embury* v. *Conner,* 3 N. Y. 511 ; *Baker* v. *Braman,* 6 Hill, 47 ; *People* v. *B. F. & C. I. R. R. Co.,* 89 N. Y. 92 ; *Taylor* v. *Porter,* 4 Hill, 147 ; *Matter of Cooper,* 93 N. Y. 507.) Even if the acts prior to 1883 did not afford just compensation for land to be taken, the act of 1883 has remedied the defect in the previous laws, and by its relation to the proceedings pending at the time of its enactment, it has validated all the proceedings. (Dillon on Mun. Corp., § 46 ; *Brown* v. *Mayor, etc.,* 63 N. Y. 239 ; *Butts* v. *Rochester,* 5 Lans. 142.) The appointment of commissioners and their proceedings in appraising the lands disturb no constitutional rights. The confirmation of their report vests no title. The title is transferred, not by virtue of the proceedings, but by the payment of the money or the existence of the remedy to enforce its payment, and that, not by force of the proceedings, but by force of the law then existing. (*Embury* v. *Conner,* 3 N. Y. 525 ; *Matter of One Hundred and Thirty-eighth St.,* 86 id. 437–459.) The act of 1876 is not amenable to the imputation of unconstitutionality. (*Sage* v. *City of Brooklyn,* 89 N. Y. 196.) The constitutionality of a statute must be sustained if possible. (*Detwold* v. *Drake,* 46 N. Y. 318 ; *Hamersley* v. *Mayor, etc.,* 56 id. 533 ; *Bloodgood* v. *M. & H. R. R. Co.,* 18 Wend. 9.)

*Arthur Berry* for the city of New York, respondent.

DANFORTH, J. This is an appeal from an order of the General Term of the Supreme Court, in the first judicial department, March 28, 1884, affirming an order of Special Term, which denied a motion made by certain property-owners to vacate several orders by which commissioners of estimate and assessment were appointed to carry into effect an act entitled "An act granting to the United States the right to acquire the right of way necessary for the improvement of the Harlem river and Spuyten Duyvil creek, and for the construction of another channel from the North river to the East river through the Harlem kills, and ceding jurisdiction over the same." (Laws of 1876, chap. 147, as amended by chap. 345 of the Laws of 1879.)

The orders complained of were made in the course of proceedings instituted by the United States through petition dated October 8, 1879, addressed to the Supreme Court of this State, setting forth a desire to acquire certain described lands as necessary for the construction and use of the improvement, and other allegations required by the provisions of the statute relating thereto. (Laws of 1876, chap. 147, § 2.)

The appellants have a standing in court as persons whose lands are affected by those proceedings, and in their behalf the point is made that the acts in question are unconstitutional and void because,

*First.* "The right of eminent domain cannot be exercised by one sovereignty for the uses of another," and, therefore, "the State cannot condemn lands for the use of the general government."

*Second.* Because they are designed to take private property without making just compensation.

*Third.* Because the title of the act offends article 3, section 16 of the Constitution, which provides that no local or private bill shall contain more than one subject and requires that subject to be embraced in the title.

(1.) While the Federal government, as an independent sovereignty, has the power of condemning land within the States for its own public use (Cooley's Const. Law [5th ed.],

525; *Kohl* v. *U. S.*, 91 U. S. 367), we see no reason to doubt that it may lay aside its sovereignty, and, as a petitioner, enter the State courts and there accomplish the same end through proceedings authorized by the State legislature. If the State may delegate its power to a private corporation of another State, for the benefit of a canal located within its borders, as was held by this court in the *Matter of Peter Townsend* (39 N. Y. 171), so it may to an independent political corporation where the use is public and the convenience shared by its own citizens. (*Gilmer* v. *Lime Point*, 18 Cal. 229 ; *Burt* v. *Merchants' Insurance Co.*, 106 Mass. 356.)

That the use for which the land is sought is a public one, has not only been determined by the legislature (Laws of 1876, *supra*, § 6 ; Laws of 1880, chap. 65, § 5, as amended by § 1, chap. 214 of the Laws of 1883), but is also apparent. The river and the creek are within the State ; in each the tide ebbs and flows ; the improvement is beneficial, therefore, not only for the purposes of the general government in its control over navigable tide waters, but will also provide for our own citizens through an unobstructed water-way, means of easy transportation and communication between the North and East rivers. Therefore, whether we regard the principle which controls the exercise of eminent domain or the Constitutions of the Federal and State governments, there would seem to be no reason why the State should not accept the aid offered by the United States in carrying on a public work in which both are interested. The State by its governor might take possession of the necessary lands under the authority of the legislature, and by purchase or through proceedings in the courts deprive the owner of his title. (Code, § 2104.) So might the United States. (Code, § 2119.) It would be very singular if that which either party might do could not with equal propriety be accomplished by both. But in face of all this the learned counsel for the appellant argues that the statutes before us (Laws of 1876 and of 1879, *supra*) are not within the sphere of State powers, and in support of that contention cites *Trombley* v. *Humphrey* (23 Mich. 481).

In that case, however, the United States was not a promoter, and the damages, when assessed, were to be paid from the State treasury. It was held the State could not condemn lands for the use of the United States, or assess the compensation it should pay; that such appropriation and assessment must, therefore, be provisional and subject to its acceptance and ratification, and so the court refused to grant to the land-owners a *mandamus* to compel the State treasurer to pay the sum awarded. This feature seems to distinguish it from the case before us, for here the United States is an actor — is itself moving to condemn the property in question, and has actually appropriated money toward the desired improvement. (U. S. Statutes, vol. 50, pages 158, 372; U. S. Statute of 1874, chap. 457; of 1875, chap. 134; of 1878, chap. 264; of 1879, chap. 101.) In that the State undertook to act, not for its own ends, but in order to turn the land, when taken, over to the United States for light-house purposes, provided the Federal government would receive it, " so that," as the learned commentator, who, as judge, took part in the decision, says : " The aid of the court was invoked, not to enable the United States to obtain lands it wanted, but to compel the State to pay for lands for the United States, which were not wanted." (Cooley on Const. Law [3d ed.], note to page 526.) The effect of the decision was that the State could not condemn land for the use of the United States so as to bind the Federal government to make compensation.

In the case before us, the legislature provides a method of compensation to the land-owners, independent of any action by the Federal government in respect thereto.

*Kohl* v. *The United States* (*supra*) is also cited by the appellants. That case decides that the United States may exercise within the States the power of a sovereign and condemn land for its own use by proceedings in its own courts, and it is not compelled to resort to State courts. Neither proposition is in issue here. That case does not hold that the Federal government cannot, if it chooses, go into State courts to secure the same end. *Darlington* v. *United States* (82 Penn. St.

382) is also insisted upon by the appellants. The decision turned upon the construction of two statutes — one of the United States, the other of the State. The validity of both was assumed. By the first, Congress (17 U. S. Statutes at Large, 621) authorized the secretary of the treasury to acquire by purchase, or if necessary by condemnation, " a suitable piece of ground in the city of Pittsburgh for the erection of a court-house " and other government offices. By the other statute the State consented to such acquisition, and provided that if condemnation was resorted to, the laws of the State, applicable to such proceedings, should govern, but provided that the United States might pay the costs and refuse to take the land, if, in its judgment, the compensation assessed therefor was excessive. Under this act a petition was presented to the State court by the United States through its attorney, in which these statutes were set forth, and also that three pieces of land had already been condemned, and a fourth was wanted, " with a view of selecting one of them." The court held upon appeal by its owner that proceedings for condemning the fourth site were not authorized by the act, and that in other respects the petition was insufficient. For this reason, and not for want of jurisdiction in the State courts, or capacity in the suitor, all proceedings subsequent to the filing of the petition were set aside.

These cases (*Trombley* v. *Humphrey*, *Kohl* v. *United States* and *Darlington* v. *United States*, *supra*) do not aid the appellants, while *Gilmer* v. *Lime Point* (*supra*) and *Burt* v. *Merchants' Ins. Co.* (*supra*) are opposed to their contention. In both, proceedings for the condemnation of lands on the application of the United States were entertained by the State courts. Under the first, premises were condemned for a fortification; under the second, for a post-office. They accord with the views expressed by this court in the *Townsend Case* (*supra*), are not opposed to those of *Kohl* v. *United States* (*supra*), and contain, we think, a correct exposition of the law. If lands may be taken for the use of the people of the United States, it cannot prejudice the proceedings for that purpose

that they are instituted by consent of the legislature of the
State, in which they lie, and in a way prescribed by it, made
to conform to the regulations of its courts.   Nor was the action
of the legislature in this case without a precedent.   By the
Laws of 1847 (Chap. 196), the State consented to the purchase,
by the United States, of lands for the purpose of erecting a
light-house, and provided that if the title could not be so ac-
quired, the land might be taken and damages assessed by in-
quisition from the State court, in like manner as if it had been
taken by the State for the use of the people of the State.
That contingency arose.   Upon an application by the United
States to our State court for a writ *ad quod damnum*, to assess
the owner's damages, it was objected in his behalf among other
things, " that it was not competent for the State to assign to
the United States, its eminent domain for any purpose foreign
to the use of the State," but the contention did not prevail,
and the writ issued.   (*United States* v. *Dumplin Island*, 1
Barb. 24.)   General provision for such cases was also made by
the statute (2 R. S., p. 111, chap. 14, art. 4), which provided for
assessment of the owners' damages whenever lands were taken
for the use of the United States by consent of the legislature
of this State.   A similar clause is also contained in our present
statute (Code, § 2119).   The one before us is equally within
the power of the legislature to enact, and is designed for cases,
and to remove difficulties which the other did not provide for.
The same principle, however, governs both.

(2.) The fundamental doctrine of course is that private
property cannot be taken for public purposes without just
compensation, but this need not be given in all cases concur-
rently in point of time with the actual exercise of the right of
eminent domain.   It is enough if an adequate and certain
remedy is provided whereby the owner of such property may
compel payment of his damages. (*Bloodgood* v. *M. & H. Rail-
road Co.*, 18 Wend. 9 ;  *Lyon* v. *Jerome*, 26 id. 485 ;  *People*,
*ex rel. Utley*, v. *Hayden*, 6 Hill, 359 ; *Rexford* v. *Knight*,
11 N. Y. 308.) This means reasonable legal certainty. (*Chap-
man* v. *Gates*, 54 N. Y. 146 ; *Sage* v. *City of Brooklyn*, 89 id.

189.) Have the acts under which these proceedings are justified, omitted to make such provision ? The answer to this question depends upon the law as it existed when the motion was denied. That was on the 1st day of February, 1884. No land had then been taken, and the proceedings to that end were inchoate.

By the act of 1876 (Chap. 147, § 4), it is made the duty of the commissioners to ascertain and determine the compensation which ought justly to be made to those owning or interested in the real estate appraised; and section 5 provides for a hearing of their report by the court, upon notice to the parties interested, and an order, if it be confirmed, directing to whom the money is to be paid, but I do not find in it any provision indicating how the money is to be raised. By the amendment of 1879 (Chap. 345, § 5), however, the commissioners are directed not only to ascertain the compensation to be made, but also "the amount to be assessed upon the real estate benefited by the improvements," and "establish the area of real estate upon which the amount necessary to pay the awards and expenses of such proceedings shall be assessed by them;" section 6 of the same act so amends section 5 of the act of 1876, as to provide for the collection of the assessment and payment of the awards to those entitled thereto, and a report to the court for such action as to it shall seem meet. It is only after these things are done that the United States can take possession of the property, or the owners be divested of their rights.

In 1880 the act of 1876 was further amended (Laws of 1880, chap. 65), and in 1881 the last act was also amended (Chap. 61 of the Laws of 1881), and the comptroller of the city of New York authorized to raise on the assessment bonds of the city the sum of $50,000, or so much as might be necessary to make up any deficiency in collection of the sums assessed under the statutes relating to this improvement, and from the proceeds of the collections and these bonds pay all sums which had been awarded to persons interested in lands taken for it.

Further amendments were made in 1883 (Laws of 1883, chap. 214), and the comptroller of the city of New York was

authorized to raise upon the assessment bonds of the city of New York a sum not exceeding $200,000, and to pay therefrom the several sums awarded to the owners or parties interested in the lands taken or to be taken for the purposes of said improvement, and declared that this being done the United States should be entitled to enter upon, take possession, and use the lands and premises for the purposes of the improvement, and all persons who had been made parties to the proceeding should then be divested and barred of all right and interest in the same. This is quite sufficient. The statute not only provides for raising the necessary money, but for payment of it to those interested before they can be required to part with their property. Its payment is made a condition precedent.

If any doubt existed as to the force and effect of prior statutes relating to this matter (Laws of 1876, chap. 147; of 1879, chap. 345; of 1880, chap. 65; of 1881, chap. 61; of 1882, chaps. 377, 410) it is removed by the one cited (Laws of 1883, *supra*), and by which they are amended. Up to the time of the passage of that act no person was aggrieved, no land had been taken, and so far as appears no one complained of any wrong. However defective the original act might be in respect to the method of compensation, the defect might be waived by persons interested (*In re Application of Cooper to acquire Lands*, 93 N. Y. 507), or rights of land-owners relinquished by their consent. Until their property was interfered with there could be no ground of complaint, and, if at that time compensation was provided for, the ground would be taken away. So far as the question now before us is concerned, it in no degree affected the legality of proceedings under the statutes for the appointment of commissioners, or their proceedings. By none of them could any constitutional right be impaired.

(3.) I have already set out the title of the act of 1876. It is not fairly open to the objection urged against it. The subject is well expressed: " The right to acquire the right of way necessary for the improvement of the Harlem river and

Spuyten Duyvil creek, and ceding jurisdiction over the same." The act itself is limited to matters which relate to that subject, or which are implied in it, and are necessary to make it effectual — the acquisition of lands, by purchase or compulsory proceedings, the manner of payment, and the mode of acquiring means therefor. All these are incidental to or parts of the principal matter, and are material to the accomplishment of the general purpose. This is sufficient. (*Brewster* v. *City of Syracuse*, 19 N. Y. 117; *In re Mayer*, 50 id. 504; *Neuendorff* v. *Duryea*, 69 id. 557; *In re Department of Public Parks*, 86 id. 437.)

Some other objections to the validity of the statutes are made by the learned counsel for the appellants. They assume that the indebtedness created by the city of New York under the bonds issued will be for other than its own purposes. The whole argument of the judges in *Townsend's Case* (*supra*) is to the contrary, and applies here. In that case an artificial canal was deemed a proper object for the exercise of the right of eminent domain, because it increased the means of intercommunication, and thus became of interest to every business man and owner of property in that city, so the improvement now in question will, if carried out, render useful a continuous navigable stream within its own borders, thereby adding to its producing power, and the value of all land within those limits.

No other portion of the appellant's argument requires notice. It discloses no error in the order appealed from, and it should, therefore, be affirmed.

All concur.

Order affirmed.