IN THE MATTER OF THE PETITION OF THE NEW YORK, LACKAWANNA AND WESTERN RAILWAY COMPANY, RESPONDENT, FOR THE APPOINTMENT OF COMMISSIONERS TO APPRAISE CERTAIN LANDS OF THE UNION STEAMBOAT COMPANY, APPELLANT.

*Taking of land for railroad purposes — the existence of the corporation must be proved — what proof of signing of the articles of association is required — what powers may be delegated by the subscribers — a road that has leased its line may apply to take land — the necessity for the taking of the land must be established to the satisfaction of the court.*

An application for the appointment of commissioners to appraise the damages to be occasioned by the taking of land for the purposes of a railroad, may be resisted by the landowner upon the ground that the petitioner has not been legally incorporated.

Upon such an application the petitioner produced a duly certified copy of the articles of association, filed as required by law in the office of the secretary of state, from which it appeared that the said articles were subscribed by twenty-six persons, but that in three instances the name of the subscriber was written not by the subscriber himself but by a person purporting to sign as his attorney.

Section 3 of chapter 140 of the Laws of 1850 provides that "a copy of any articles of association filed and recorded in pursuance with this act * * * shall be presumptive evidence of the incorporation of such company and of the facts therein stated."

Held, that it was to be presumed that the persons signing the names of the three subscribers were duly authorized by them so to do.

That although the subscribers must themselves determine the various facts to be stated in the articles of incorporation and could not delegate the power to agree upon the terms of the organization of the company, yet that after they had come to an agreement upon these matters they might delegate to another person the power to do the formal act of affixing their signatures.

The fact that a railroad company, organized under the laws of this State and carrying on its business herein, has leased and transferred for the term of its corporate existence its road and business to a foreign railroad corporation, and that the latter has taken possession of the said road and is managing and conducting the business thereof, does not prevent the domestic corporation from applying to acquire the title to lands necessary to be used in carrying on the business.

The statute requires that the length of the road, as near as may be, shall be stated in the articles of association. The articles in question stated the termini of the road, and that its length was to be about 300 miles.

Held, that this was sufficient.

In reviewing an order of the Special Term appointing commissioners to appraise damages upon the application of a railroad company, it is the duty of the General Term to examine the evidence and determine whether the petitioner has fairly made out a case establishing that the premises are necessary for its use. Where, however, the necessity is shown to exist, and it is shown that the company has acted in good faith and exercised a reasonable discretion, the court will not interfere.

APPEAL from an order made at a Special Term appointing commissioners to appraise the damages to be sustained by the taking of certain property for railroad purposes.

The petitioner is a railroad corporation organized under the general laws of the State to construct and operate a railroad from Binghamton to the city of Buffalo. The line of the road was constructed and ready for operation in October, 1882. These proceedings were instituted in June, 1883, to acquire title to the lands described in

the petition for the purpose, as therein stated, " of erecting and maintaining warehouses for the reception of freight and merchandise to be transported by it, and for delivery and transfer to others of freight transported by it, and for the purpose of operating its said railroad and for the purpose of its incorporation." The premises mentioned have a frontage of 322 feet on Buffalo river, and are bounded on one side by a slip which connects with the harbor and the Erie canal, and is navigated by canal boats and the smaller class of lake vessels. The steamboat company is a corporation organized under the laws of the State of New York, and is engaged in lake transportation, carrying passengers and freight to and from the principal ports in all the western and upper lakes, carrying a large amount of freight and owning and having in its use from sixteen to twenty propellers. The Delaware, Lackawanna and Western Railroad Company is a railroad corporation organized under the laws of the State of Pennsylvania, the line of its route being from Binghamton to Jersey City. Since the line of the petitioner's road has been completed and ready for operation, it has executed a lease of its road and transferred the operation of the same to the Delaware, Lackawanna and Western Railroad Company for the entire period of its corporate existence, which was expressed in the articles of incorporation to be 100 years. After the lessee entered into the possession of the property and commenced the management of the road these proceedings were instituted, the Delaware, Lackawanna and Western Railroad Company not being a party thereto. The steamboat company appeared and filed an answer denying all the material allegations set forth in the petition, and the issues of fact were referred to a referee to take the evidence and report the same to the court with his opinion thereon. The referee found as facts, that the petitioner was duly created a corporation under the general statutes of this State, and that the property in question was necessary for the uses and purposes set forth in the petition. This report was confirmed at Special Term, and commissioners were appointed to fix the compensation which should be paid the Union Steamboat Company. From such order the steamboat company appeals.

Proper and timely exceptions were taken to all the findings of fact and of law by the referee, which the appellant seeks to review on this appeal.

*George S. Hibbard*, for the appellant.

*Bowen, Rogers & Locke*, for the respondent.

BARKER, J. :

The appellant makes the point that the petitioner was never legally organized as a corporation. One of the grounds stated is, that less than twenty-five persons made and signed the articles of association filed with the secretary of state.

The general railroad law, under which the petitioner claims to be created a body corporate, provides that " any number of persons, not less than twenty-five, may form a company for the purpose of constructing and operating a railroad ; and, to effect such purpose, may make and sign articles of association." (Chap. 140, Laws of 1850, § 1.)

The statement of facts required to be set forth in such articles are mentioned in the same section, followed by a provision that they shall not be filed until there is indorsed thereon an affidavit, made by at least three of the directors named in the articles, that the amount of stock required by this section has been in good faith subscribed, and ten per cent paid in cash thereon as aforesaid ; and that it is intended to maintain and operate a road mentioned in such articles of association, which affidavit shall be recorded with the articles of association as aforesaid. For the purpose of making proof of the existence of such corporation after the same has become duly organized, it is further provided that " a copy of any articles of association filed and recorded in pursuance with this act, or of the record thereof, with a copy of the affidavit indorsed thereon or annexed thereto, and certified to be a copy by the secretary of state or his deputy, shall be presumptive evidence of the incorporation of such company and of the facts therein stated."

The articles in question were filed on the 26th day of August, 1880, and on the hearing a copy duly certified was read in evidence. The legislature has made it a condition precedent to the act of incorporation and as preliminary thereto, that not less than twenty-five persons shall make and sign articles in form and effect in compliance with the first section. Unless this act be done it is not in the power of any judicial tribunal to declare that a corporation does exist. To hold otherwise would be to defy and defeat the object

and purpose of the law-making power of the State.    In view of
the extended powers conferred on such corporations the condition
is eminently wise and judicious.    When such companies are legally
created they are intended to be for the public benefit and use, and
the legislature has conferred upon them the power to take private
property for its necessary use on paying a fair and just compensa-
tion therefor.

It is a point now well settled that railroad corporations organized
under and in pursuance of the usual provisions of general laws must
perform all conditions precedent before they can condemn private
property for their own use.    When proceedings are instituted by the
company for that purpose they may be successfully resisted and
defeated by the landowner, if it be established that the petitioner has
not a legal corporate existence.    The right to condemn private prop-
erty for public use by a corporation has its foundation in the fact that
there is a full and complete corporate existence, without which the
proceedings cannot be maintained.    (*In the Matter of B. W. and
N. R. Co.*, 72 N. Y., 245 ; *Brooklyn Steam Transit Co. v. City of
Brooklyn*, 78 id., 531 ; *Utley & Godfrey* v. *Union Tool Co.*, 11
Gray, 139 ; Pierce on Railroads, 6, and cases there cited.)

This brings us to the question, did the petitioner prove on the
hearing before the referee that twenty-five persons made and signed
the articles of association filed with the secretary of state ?    A
certified copy of such articles is the only proof on the subject.    By
the same it does appear that the names of twenty-six different per-
sons are subscribed thereto.    The names of four of such persons
purport to be subscribed by other persons.    Thus, " Sidney Dillon,
per James H. Ham ; "  "John S. Blair, by Sam Sloan, Atty. ; "
" George Bliss, by Morton Bliss ; "  " Wm. E. Dodge, by J. T. Huff."
Opposite these names is written the number of shares of capital
stock taken by each and the place of residence of each is also given.
No other proof was given that the persons who wrote the names of
these several subscribers were authorized so to do.

We think and hold that by force of the statute *prima facie* proof
was thus made that all the names subscribed to the articles, including
those of Dillon, Blair, Bliss and Dodge, were genuine and the sub-
scription by the persons last named, by others, was duly authorized
by them.    The statute is very plain as to the effect to be given by

the court, as evidence, to a certified copy of the articles and the affidavit thereto attached, for it declares "that they shall be presumptive evidence of the incorporation of such company and of the facts therein stated." It has been frequently held by the courts, that under this and similar provisions in other statutes, a certified copy is proof, *prima facie*, of the genuineness of the signatures thereto attached, in an action against a subscriber for the amount of stock purporting to be subscribed by him. This has been so held in cases where there were no facts or circumstances in existence upon which the law of estoppel could be applied. Such rulings have been upheld for the sole reason that the legislature has seen fit to declare certain articles shall be received as *prima facie* evidence that they are in all respects genuine and as the acts of the persons whose names appear thereto as subscribers. This rule of the statute will seldom work an injury or great hardship to individuals, and as a law of evidence is one of great public as well as private convenience. An individual who has been instrumental in bringing about co-operation among a sufficient number of persons to create a corporation, who have agreed upon all the terms and conditions required by the statute, and caused articles of association to be prepared in due form, may, as we think, be authorized to do the manual act of signing the names of such others thereto. The person who does the manual act of writing the name of the subscriber is the mere amanuensis of the one who engages him to make the subscription. If the statute forbids a subscription being made in this manner, then a person who is disabled and cannot write his name cannot become an original incorporator. As to the four persons already named it appears, from the face of the paper, that they did not, each for himself, personally subscribe their names thereto, but it does appear that that act was done by another person whose name also appears on the face of the instrument. In our opinion the statute is broad enough in its terms to justify the ruling that the presumption is that the signing was the authorized act of the persons whose names are attached to the articles as subscribers and incorporators. In reaching this conclusion we do not intend to affirm that any number of persons, not less than twenty-five, can delegate to an agent or attorney power and authority to make and agree upon articles of association, and determine for them, and in their name, upon all the

matters which the statute requires to be done, and agreed upon before a company can be created. As to such matters they must be determined by the judgment and common agreement of the incorporators themselves.

We concur in the position of the appellant that such power cannot be delegated, and for the manifest reason that no such power or right exists in any individual to delegate such matters to another. But the mere act of signing the articles, after the terms of the same have been agreed upon, by and under the direction of the proposed incorporators, is a very different thing, and that act may be delegated to another to do.

Another objection to the legal organization of the company has been made, based upon the alleged omission, on the part of the incorporators, to comply with the statute, in omitting to make the proper statement in the articles of association as to the length of the proposed road. The statute requires "the length of such road, as near as may be," to be stated in the articles. Each *termini* is mentioned, and this is followed by a statement that the length of the road and branches "is to be about three hundred miles, and the capital stock is fixed at ten millions of dollars." The affidavit attached to the articles states that "at least one thousand dollars per mile, for every mile of railway proposed to be constructed, to wit, three hundred miles, has been and is subscribed thereto, and ten per cent in cash has been paid thereon in good faith to the directors named in the said articles of association." The statute does not require exactness in making the statement as to the length of the proposed road, but it is sufficient if the statement, as made, gives its approximate length. We think there has been a substantial compliance as to the other matters required to be set forth in the articles.

By the instrument called the lease, the petitioner transferred to the lessee the full and unreserved right to manage and operate the road, and to do and control all the business connected therewith. The rent reserved to the lessor, and the time and manner of payment, the conditions of forfeiture, and the right of re-entry by the lessor, were stipulated for with careful detail. The lessee has taken possession of the road, and is now operating the same in connection with its own line, which extends from Binghamton to Jersey city;

the two roads, operated together, make a continuous route from New York to Buffalo.

It is now contended by the appellant that this act of the lessor corporation is illegal and in excess of its legitimate power, being in effect a surrender of its franchise and is contrary to public policy, and for that reason it should be held as a matter of law, that the petitioner is incapacitated from exercising the right of eminent domain conferred upon it by the legislature, and that the court should dismiss this application upon these grounds. Without the consent of the legislature the lease would be invalid as an unauthorized act on the part of the lessor corporation. It has, however, been adjudged that power has been conferred on railroad corporations organized under the general laws of this State, to lease their roads and property and transfer the management and operation of the same to another railroad corporation. (Laws of 1839, chap. 218; *Woodruff* v. *Erie Railway Company*, 93 N. Y., 616; *People* v. *A. and Vt. R. R. Co.*, 77 id., 234; *T. and B. R. R. Co.* v. *B. H. T. and W. R. Co.*, 86 id., 107; *Foster* v. *N. Y. C. and H. R. R. R. Co.*, 46 id., 644.) The circumstance that the term of the lease is during the corporate life of the lessor rather than for a shorter period, does not distinguish the case in principle from those just cited. The enabling act places no limitation as to the length of the term for which agreements of this character may be made. Neither is the lease invalid, for the reason that the lessee is a foreign corporation. There is no provision in the act prohibiting a lease by a railroad company organized under the laws of this State to a foreign corporation, on the contrary, the language of the statute is sufficiently broad to embrace them, and so far as the consent of this State is necessary to make them competent to accept a lease and assume the control and management of a railroad corporation organized under our laws, the language of the statute is very comprehensive in this particular, and permits any railroad corporation to contract with another railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract. The statute received this construction in the case of *Ogdensburg, etc., R. R. Co.* v. *The Vermont, etc., R. R. Co.* (16 Abb. [N. S.], 249), and we concur in the views there expressed.

It is a cherished policy of this State to favor and facilitate inter-state commerce, and to invite the trade and traffic of other communities over our own lines of transportation, inducing merchants to seek a market in our towns and cities. To effect this purpose is one of the aims of the enabling act of 1839. The roads of the lessor and lessee, when run in connection, make a continuous line between two of the most widely separated and important cities and harbors in the State, the route also commands, in addition, a large local coal traffic, in which trade the general public are interested and bene-fited. By the laws of comity a foreign corporation organized under the laws of another State can, within the jurisdiction of this State, exercise such corporate powers and franchises as are conferred upon it by the law of its creation, unless prohibited by the laws of this State. This privilege is conferred upon corporations as freely and fully as it is upon citizens of another State. Under this rule foreign corporations can do in this State, within the limit of their charter powers, precisely what a domestic corporation can lawfully do. (*The People* v. *The Fire Association of Philadelphia*, 92 N. Y., 324; *Hollis* v. *Drew Theological Seminary*, 95 N. Y., 175.)

The lessee being in the use and management of the petitioners' road under a valid lease, it could, under the provisions of the twenty-first section of the general statute, acquire title to land neces-sary for the purpose of running and operating the road under such lease by instituting, in its own name, the proceedings therein pro-vided. As we have, as we suppose, found a statute authorizing the making of the lease, and another authorizing the lessee to exercise the right of eminent domain in particular instances, the court can-not declare the proceedings unauthorized and as against public policy. (*Hollis* v. *Drew Theo. Sem.*, *supra*.)

Without legislative authorization a foreign corporation cannot exercise the right of eminent domain, but when such power is bestowed it may. This was settled *In the Matter of Townsend* (39 N. Y., 175), and the doctrine was reaffirmed in the Court of Appeals *In the Matter of the United States* (96 N. Y., 227; see, also, Pierce on Railroads, p. 145). These proceedings were initiated after the execution of the lease, and after the lessee had commenced the use and operation of the road, but these acts do not take from the peti-tioner the right to resort to the power conferred upon it by the law

under which it was organized, to condemn lands necessary for the use and operation of the road, and to enable it to carry out the object and purpose of its organization, and to discharge the duties it has undertaken to perform for the public. The execution of the lease did not terminate its corporate life. It continued to exist as a legal entity, and remained under the same obligations to the public as it did before the leasing, with the right and power still existing in the State to compel it to go on and discharge all its duties to the public by compelling it to run and operate its road in such a manner as the public interests may require. The petitioner has a standing in court for the purpose of accomplishing the object set forth in its petition. (*Abbott* v. *J. G. and K. H. R. Co.*, 80 N. Y., 27; *Kip* v. *N. Y. and H. R. R. Co.*, 6 Hun, 27; Mills on Eminent Domain, § 63.)

This brings us to the consideration of the question whether the averments set forth in the petition, that the lands are necessary for the use and operation of the road, is fairly supported by the evidence. It is the question which has caused us the most difficulty in reaching a solution. The subject would be quite free from doubt were it not for the special and particular use to which the owner is devoting the premises sought to be acquired by the petitioner. It is not disputed but that the railroad necessarily requires a frontage and dock facilities in Buffalo harbor for the proper, profitable and convenient transaction of its business at that place, and that it also needs in addition to the frontage and facilities already acquired, a further dockage of about 300 feet; just about the width of the dock owned by the steamboat company. The land already secured by the petitioner is adjacent to this property.

In disposing of the question thus presented we are of the opinion that this court has the power, and that it is our duty to examine the evidence and determine whether the petitioner has fairly made a case, establishing that the premises are necessary for its use in receiving, discharging and storing lake freight.

We are also of the opinion that the determination by the petitioner that the lands are necessary in handling this class of freight is not conclusive upon the court. That is a judicial question and is to be determined as a question of fact by the court from the evidence and circumstances of the case, before the right of eminent domain can be exercised in behalf of the petitioner to acquire title

to the lands mentioned. The legislature has not delegated to rail-road corporations the power to determine what lands are necessary to be appropriated to their use in transacting their business. As to the necessity and extent of the appropriation the court must determine. But when the necessity is shown to exist, and a reasonable discretion has been exercised by the corporation, and it has acted in entire good faith in making the selection, the court will not interfere. (*In the Matter of the N. Y. C. R. R. Co.*, 66 N. Y., 409; *R. and S. R. R. Co.* v. *Davis*, 43 id., 137; *In the Matter of the N. Y. C. and H. R. R. R. Co.*, 77 id., 264.)

The referee has found, and the Special Term has concurred in his conclusion, that the railroad company has acted in good faith in selecting these lands for its use, and we do not hesitate in yielding our concurrence on this particular question. We have failed, in our examination of the case, to discover any reason for a bad motive on the part of the railroad company towards the appellant, or in their purpose in selecting this site for the transfer and storage of its lake freight. It might well be supposed that the most friendly relations, so far as business is concerned, would exist between these companies, as each is interested in enlarging and increasing facilities for bringing freight into Buffalo harbor, designed for transportation beyond its own line. This leaves for our consideration only the question of necessity. The railroad has already acquired 620 feet of frontage, and, with the acquisition of the land now sought, it it will have a total frontage of about 950 feet. It seems to be established, beyond all fair controversy, that the reasonable wants of the company require more than 620 feet river dockage, and that 950 feet will not be in excess of its necessities, present and prospective. All the proofs are in one direction on this question. The New York Central and the Erie Railway Company have acquired, and are in the use of, dockage not less capacious than that sought to be secured by the petitioner. The fact which has troubled our minds the most, and produced a hesitancy in yielding to the petitioner's demand, is not that it does not require so much dock accommodation as is asked for, but as to the necessity of having a part of such accommodation on the premises now owned by the steamboat company, and used by it in carrying on its business as common carrier on the lakes.

There is not now any railroad connection with the docks of the steamboat company by which it can receive from cars, or transfer to them, lake freight, nor does it seek to have any such accommodations established so as to do that class of business on these premises. The defendant does an extensive transportation business, owning and running from sixteen to twenty propellers, and ninety-two per cent of its freight is and has been for many years transferred to one of the existing railroad lines, and it receives about the same per cent of its up lake business from the same company. The business done at these docks by the steamboat company is the receipt and delivery of what is termed town freight, that is, the Buffalo city business, and in amount it is only eight per cent of its entire business.

The referee has found, and we think it well established by the evidence, that for the town business, this locality is the most feasible and desirable of any place in Buffalo harbor; and if the same is condemned to the use of the petitioner, and the steamboat company establishes itself elsewhere, it will be most likely to suffer some loss in this kind of business. The petitioner will not acquire any portion of the business which the steamboat company may lose thereby. It can be compensated for such loss by the compensation it will receive for the property taken, for the advantages possessed by this property in this respect must give to it an exceptional market value. It may be conceded, and the appellant gave some evidence tending to establish, that the petitioner might have made the selection of another site which would have secured to it all necessary facilities required for the purposes mentioned in the petition. That is not, however, a sufficient reason why this application should be denied by the court. The location of the business sites of the company is within the discretion of the managers, and the courts cannot supervise it. The legislature has committed to the discretion of the corporation the selection of lands for its use, and if the same is made in good faith, and there is a necessity of acquiring the lands, and the same are suitable, the courts cannot control the exercise of the discretion, or direct which of several plots of ground shall be taken. If this selection was made from unworthy or malicious motives, and not in the interests of the public, the court, doubtless, then would have the power, and in exercise of its discretion would withhold its consent to the appropriation. (*In re N. Y. and H. R. R. Co.* v. *Kip*, 46

N. Y., 555.). These lands front upon Prime street, along and through which the petitioner has laid down and is operating a track. This privilege was acquired from the proper authorities of the city of Buffalo. The appellant attacks the validity of such proceedings, and claims that the railroad company did not acquire any legal right to occupy the street for that purpose. We are of the opinion that this question cannot be raised by the appellant in these proceedings, with a view of defeating the same, and we therefore do not pass upon any of the questions pressed upon our attention in this connection. Other questions of minor importance are made and argued on behalf of the appellant. We have examined all of them, and none appear to be well taken, and they cannot avail the appellant in these proceedings. The order appealed from is affirmed, with costs and disbursements.

BRADLEY, J., concurred; SMITH and HAIGHT, JJ., not sitting.

Order affirmed, with ten dollars cost and disbursements.